**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| PETER CICALE, JR., and FRANCES REMY, individually, and on behalf of all others similarly situated, | ) Case No. 24-cv-61146-AHS<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| PROFESSIONAL PARKING MANAGEMENT CORPORATION, and YSA ARM LLC d/b/a OXYGEN XL, | )<br>)<br>)<br>) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Defendants Professional Parking Management Corporation ("PPM") and YSA ARM LLC d/b/a Oxygen XL ("Oxygen XL") respectfully move to dismiss this action with prejudice pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## <u>INTRODUCTION</u>

PPM provides a parking-enforcement solution used to simplify parking operations. One of its functions is to issue notices of non-compliance with posted parking rules and rates on private parking lots. Oxygen XL handles collections for PPM when individuals fail to pay for parking, and ignore repeated notices of non-payment.

The facts here are straightforward. Plaintiffs received legally-compliant notices from PPM, after they parked in private, PPM-managed parking lots, and failed to pay. Plaintiff Cicale admits he parked at a PPM-managed lot for nearly three hours, simply drove away without paying, and received a notice of non-payment. DE 10 ¶¶ 23-25; DE 10-2, p. 2, Entry and Exit Times.[1] Plaintiff Remy admits she received a non-payment notice after she entered a PPM-managed lot for 32 minutes before driving away without paying; she now self-servingly asserts that she didn't actually park. DE 10 ¶¶ 33-37; DE 10-3, p. 2. Plaintiff Remy further complains about a collection notice she received from Oxygen XL after ignoring PPM's non-payment notice. DE 10-4.

The notices attached to Plaintiffs' lawsuit clearly stated they were not issued by a governmental entity, listed appropriate fees, and provided succinct, meaningful and prominently listed dispute procedures. *Id*. at DE 10-1, 10-2 and 10-3. Rather than using the informal dispute resolution procedures, Plaintiffs rushed to file their class action lawsuit, asking the Court to give them free parking, and much more, under the guise of non-existent statutory violations.

---

[1] DE 10 is the Amended Complaint. DE 10-2, 10-3 and 10-4 are labelled as Exs. A, B and C to the Amended Complaint respectively, and are referred to as such throughout this Motion.

The lawsuit contains five counts on behalf of an array of putative classes and subclasses. Count I wrongly contends that both Defendants' permitted business use of Department of Motor Vehicle ("DMV") information to seek parking payments, including through litigation or other adjudicatory proceedings where necessary, violated the Driver's Privacy Protection Act, 18 U.S.C. § 2721-2725 ("DPPA"). In Count IV, Plaintiffs attempt to shoehorn their non-existent DPPA claims into allegations that both Defendants committed *per se* violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). As explained below, dismissal of these counts is warranted.

In the remaining three counts, Plaintiffs unsuccessfully attempt to assert additional claims against PPM, none of which can survive a motion to dismiss. Count II twists the actual contents of PPM's non-payment notices, asserting PPM violated the Florida Consumer Collections Practices Act ("FCCPA") by attempting to get Plaintiffs to pay for their parking and advising them of the steps PPM could take (but did not take) under Florida law for non-payment. Count III also mischaracterizes PPM's non-payment notices to contend that PPM violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") by listing the legally-authorized steps PPM could take (but did not) if Plaintiffs did not pay for their parking. Count V, brought by Plaintiff Cicale, claims PPM further violated FDUPTA because he was charged a lawful credit card convenience fee when he finally paid for his parking. Plaintiff Remy is not included in Count V because she has never paid PPM.

## **FACTUAL BACKGROUND**

Plaintiff Cicale alleges that on January 5, 2024, he "parked at a private parking lot," which was "operated or managed by Defendant." DE 10 ¶ 22. Rather than pay for the parking, he "simply parked in an available parking space…and subsequently drove away." *Id.* ¶ 23. Plaintiff Remy

admits that on April 14, 2024, she entered a private parking lot "operated or managed by PPM," used it for 32 minutes, and exited without paying. *Id.* ¶¶ 33-35.[2] Both Plaintiffs allege that after they exited PPM's private parking lot without paying, PPM obtained their "mailing address" from the DMV, and requested payment. *Id.* ¶¶ 18-20, 24, 36. Plaintiff Remy further alleges that PPM disclosed her mailing address to Oxygen XL after she failed to respond to or dispute her non-payment notice, and that Oxygen XL then sent her a collection letter. *Id.* ¶¶ 41-44; Ex. C.

Plaintiffs' recitation of PPM's non-payment notices (*id.,* Exs. A, B) conveniently excludes or misstates their actual contents, much of which is in capitalized or bold print, including dispute procedures:

> DISPUTES PROCEDURE: While we take great care to ensure that our information is accurate, we understand that errors can occur and will investigate claims promptly. If you believe this Parking Charge Notice has been issued incorrectly…you can file a dispute at **www.parkinginvoice.com.** This will ensure your Parking Charge Notice is put on hold…"

Elsewhere, the non-payment notices provide: "**Important: … You have the right to dispute the debt. Disputes can be made online at www.parkinginvoice.com.**"

PPM's non-payment notices prominently state that "**THIS INVOICE IS PRIVATELY ISSUED, IS NOT ISSUED BY A GOVERNMENTAL AUTHORITY, AND IS NOT SUBJECT TO CRIMINAL PENALTIES**." *Id.*, Exs. A and B. The PPM non-payment notices list a "TOTAL AMOUNT DUE" of under $60.00, in red type at the top of each, offering to accept this reduced amount for timely payments. *Id.* Plaintiffs were given the chance to pay online or via telephone in exchange for a $4.99 convenience fee, as well as by mail for no fee. *Id*.

Similarly, Oxygen XL's letter clearly states that it is a debt collector, not a governmental

---

[2] PPM is simply restating Plaintiffs' allegations for the purpose of this Motion, and in no way accepts the truth of them.  PPM reserves any and all arguments and defenses should this action proceed, including the right to compel arbitration.

entity; provides detailed instructions about how to dispute the debt; contains links to request more information and to learn about legal rights; and contains a detachable form titled "**How do you want to respond?**" Ex. C. The first response selection is: "**I want to dispute the debt because I think:** _ This is not my debt; _ The amount is wrong; _ Other (please describe on reverse or attach additional information)." Ex. C.

<u>**STANDARD**</u>

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient facts to state a plausible claim that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations beyond the "unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court must assume the complaint's factual allegations are true, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

A Rule 12(b)(1) motion challenges standing. To confer Article III standing, an injury "must be real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). While "tangible injuries qualify as concrete," (*Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020)), "[a] 'bare statutory violation' is not enough" to confer standing. *Hunstein v. Preferred Collection and Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022). Instead, to have standing, a plaintiff must plead a harm "traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 1242.

<u>**ARGUMENT**</u>

**I.      Plaintiff Remy Does Not Have Standing to Bring Her Claims**

Remy purports to assert four claims: (1) a DPPA claim against both Defendants; (2) a *per se* FDUTPA claim against both Defendants, premised on the alleged DPPA violation; (3) another FDUTPA claim asserted only against PPM; and (4) a FCCPA claim asserted only against PPM. Remy does not have standing to bring any of these claims. Remy asserts that PPM's non-payment notice and Oxygen XL's debt collection letter violated her statutory rights, invaded her privacy, intruded upon her seclusion, and caused her "distress, harassment and annoyance." DE 10 ¶¶ 40, 45, 61. These are "bare statutory violation[s]" that do not confer standing. *Hunstein*, 48 F.4th at 1239; *Spokeo*, 578 U.S. at 341; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

As the Eleventh Circuit has noted in a prior case involving PPM, there are three essential elements to standing: (i) an injury in fact; (ii) that is fairly traceable to the defendant's conduct; and (iii) that is likely to be redressed by a judicial decision for the plaintiff. *Davis v. Pro. Parking Mgmt. Corp.,* 22-14026, 2023 WL 4542690, at *2 (11th Cir. July 14, 2023).  *Davis* also involved FDUTPA and FCCPA claims brought by an individual who received a PPM non-payment notice and Oxygen XL collection letter after parking and failing to pay. The *Davis* court concluded the plaintiff failed to allege a concrete, non-statutory harm, because the lawsuit did not assert any justifiable reliance, actual damages, or other concrete injury in fact, and there was no common law equivalent of the FDUTPA or FCCPA giving rise to an injury separate from the statutory violation. *Id*. at *2-3. Missing from the *Davis* lawsuit, as here, were any allegations that payment was made, or money or time wasted determining whether to pay. *Id*.  Similarly, Remy has not paid for her parking to this day and she does not allege that she was misled in any way. Remy also does not assert that she "wasted time" by disputing the parking charge via either PPM's or Oxygen XL's

extensive dispute resolution procedures. Those facts were fatal to standing in *Davis* and other Eleventh Circuit opinions, and are equally fatal here. *See Davis*, 2023 WL 4542690, at *3 (affirming dismissal of complaint for lack of standing where the complaint failed to allege that plaintiff made payments in response to defendant's letters or that plaintiff wasted his time by disputing the debt); *Trichell,* 964 F.3d at 996 ("But the complaints here do not allege that the collection letters caused [plaintiffs] any tangible injury" where "neither plaintiff alleges that he made any payments in response to the defendants' letters—or even that he wasted time or money in determining whether to do so.").

Remy's DPPA claims are also appropriately dismissed on standing grounds because DPPA "does not identify any particular compensable harm" and Remy does not assert any injury with a "common law analog." *Baysal v. Midvale Indemnity Co.,* 78 F.4th 976, 979 (7th Cir. 2023). In *Baysal*, the Seventh Circuit concluded that plaintiff failed to assert an injury with a common-law analog, noting that no "state ma[kes] disclosure of a driver's-license number tortious." *Id.* at 979. Similarly, Remy does not, and cannot, assert that there is any state that makes sending a letter to an individual's home tortious. Just as "a license number is not viewed as embarrassing (as a low grade point average or a poor credit score would be) or private (as medical details are) but as neutral," receiving mail at one's home is not viewed as a harmful or embarrassing, but rather as neutral and a part of daily life. *See id.*

Further, Remy never explains how she was harassed, annoyed, distressed, or how her privacy was invaded or seclusion intruded upon, by PPM's notice or Oxygen XL's letter.  Both were sent only to her home address, and never disclosed her information to any third-party.  — Remy's prototypically conclusory allegations therefore cannot confer standing. *Heres v. Medicredit, Inc.*, 2024 WL 3291738, at *12 (S.D. Fla. July 3, 2024) (dismissing allegation that

debt collection letter "disrupted and intruded upon Plaintiff's solitude and peace" as "conclusory."); *Baysal*, 78 F.4th at 977 (no standing to bring DPPA claims: standing requires "concrete injury traceable to the disclosure," such as injury via "leaked or hacked data.").

**II.    Plaintiffs Fail to Plead Actionable DPPA and FDUTPA Claims (Counts I and IV)**

**a.    DPPA Broadly Authorizes Business Uses of a Driver's Information**

Plaintiffs jointly contend that PPM and Oxygen XL violated DPPA, but neither states a viable cause of action, because DPPA only bars the use of DMV information where such use is "for a purpose not permitted" by DPPA. 18 U.S.C. § 2724(a). Plaintiffs bear the burden of showing an impermissible purpose. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.,* 525 F.3d 1107, 1112 (11th Cir. 2008). "[C]onclusory allegations" are not enough—Plaintiffs must specifically allege Defendants' "impermissible purpose." *McDonough v. City of Homestead, Fla.,* 2021 WL 9276283, at *4 n.4 (S.D. Fla. Sept. 1, 2021) (dismissing allegation that defendant had a "use not permitted by DPPA" as "conclusory."); *Chevaldina v. Katz*, 787 F. App'x 651, 655 (11th Cir. 2019) (same).

There are many permissible uses of DMV information under DPPA, including any "legitimate business" use. *Young v. W. Pub. Corp.,* 724 F. Supp. 2d 1268, 1279 (S.D. Fla. 2010) (DMV information is "only [] denied to a narrow group of people that lack legitimate business"); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 336 (5th Cir. 2010) ("Congress did *not* intend to suppress legitimate business uses of motor vehicle records."); *Cook v. ACS State & Loc. Sols., Inc.,* 663 F.3d 989, 995 (8th Cir. 2011) (DPPA protects "legitimate governmental and business needs for [DMV] information." It "defines 'legitimate business' broadly, including…private investigations, and anything related to the operation of a motor vehicle." It is designed to allow businesses to use DMV "information that is necessary and essential for them to do business.") (quoting DPPA's

legislative history). In analyzing DPPA, its purpose, and its legislative history, the Eighth Circuit could not identify a single business-related use of DMV information which is impermissible. *Id.* at 995-96 ("the only business that [DPPA co-sponsor] Moran expressed concern about was the use of driver information in direct marketing solicitations. Even this use was not prohibited.").

Rather than targeting PPM's and Oxygen XL's legitimate business uses, DPPA was intended to prevent stalking, harassment and related crimes. *Margan v. Niles*, 250 F. Supp. 2d 63, 68–69 (N.D.N.Y. 2003). Indeed, DPPA arose after the death of an actress, Rebecca Schaeffer, whose stalker and killer obtained her address through DMV records. *Id.* at 68-69 ("[T]he murder of Rebecca Schaeffer led to [DPPA]." "Congress enacted [DPPA]" due to "the concerns of women who were being stalked because of easy access to motor vehicle records." "[T]he intent of this bill is simple and straightforward…to stop stalkers from obtaining the name and address of their prey before another tragedy occurs…[DPPA]…is a reasonable and practical crime fighting measure." intended to "close[] a loophole in the law that permits stalkers to obtain—on demand—private, personal information about their potential victims.") (quoting DPPA's legislative history).

Plaintiffs have failed to identify how Defendants used their information for an impermissible purpose, instead conceding that Defendants obtained their information to obtain payment for use of PPM's private parking lot—an obvious legitimate business purpose. DE 10 ¶¶ 18-20, 24, 26. Plaintiffs' failure to specifically identify an impermissible purpose alone defeats their claims, as such specific identification is required under DPPA. *Thomas*, 525 F.3d at 1112; *McDonough,* 2021 WL 9276283, at *4 n.4; *Chevaldina*, 787 F. App'x at 655.

### b. Plaintiffs' Own Allegations and Exhibits Show that Defendants' Use of Plaintiffs' Information is Expressly Authorized under DPPA

Plaintiffs have failed to adequately allege an impermissible use of their DMV information. Beyond that, Plaintiffs concede that DPPA specifically authorizes "permissible uses" of DMV

information. DE 10 ¶ 58. Plaintiffs' own allegations and incorporated documents show at least two of those uses apply here to bar Plaintiffs' claims.

### i. DPPA Subsection (4) Expressly Authorizes Defendants' Use of Plaintiffs' Information in Anticipation of Litigation or Adjudication

DPPA expressly authorizes the use of DMV information "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including [for] investigation in anticipation of litigation." 18 U.S.C. § 2721(b)(4).

"The plain language" of § 2721(b)(4) is "extremely broad." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.,* 2006 WL 8431100, at *5 (S.D. Fla. Nov. 7, 2006). DPPA allows commercial entities to obtain DMV information even where "much of the information obtained did not turn out to be useful," or even where it was never "used for any purpose whatsoever." *Id.* at *5. It does not matter whether the information was ever used in an adjudicatory proceeding—so long as it was intended for ***potential*** use in a future proceeding, it is permitted. *Welch v. Jones*, 770 F. Supp. 2d 1253, 1259 (N.D. Fla. 2011) ("Had Congress intended § 2721(b) to require actual use—rather than only a purpose to use when appropriate—it could have said so."); *Thomas*, 525 F.3d at 1115 (dismissing DPPA claim where DMV records were obtained "for prospective, not-yet-filed litigation"); *Young,* 724 F. Supp. 2d at 1272; *Taylor*, 612 F.3d at 337 (use is permitted even where it is "likely" the information will never be actually used for such purpose).

PPM only used Plaintiffs' information to send a "parking charge notice" to initiate a potential adjudicatory dispute resolution procedure. DE 10 ¶¶ 19-21, 24-26, 36-38, 86, 89-92; *id.*, Exs. A and B ("**FAILURE TO PAY THIS PARKING CHARGE NOTICE MAY RESULT IN THIS MATTER BEING REFERRED TO COLLECTIONS.**"). And as pled by Remy,

Oxygen XL's alleged conduct is even further along the road to adjudication, as PPM only retained Oxygen XL after its initial collection attempts were fruitless. *Id.* ¶¶ 2, 11 ("When vehicle owners do not pay its citations, PPM then engages the services of its 'debt collector,' Defendant Oxygen XL, to try to secure payment."); *Id.*, Ex. C (**Oxygen XL is a debt collector.** We are trying to collect a debt that you owe…").

Courts across the country routinely hold that where DMV information is obtained to collect debts or send notices, charges, or tickets in connection with driving or parking, such use is in anticipation of litigation, and is therefore authorized under DPPA. *City of Tallahassee v. Federated Publ'ns, Inc.,* 4:11CV395-RH/CAS, 2012 WL 5407280, at *1 (N.D. Fla. Aug. 9, 2012) (dismissing DPPA claim where DMV information was used to send notices to drivers who ran red lights); *Senne v. Vill. of Palatine, Ill.*, 784 F.3d 444, 445 (7th Cir. 2015) (affirming DPPA dismissal where information was used to send parking tickets); *Lucas v. Moore*, 412 F. Supp. 3d 749, 755 (S.D. Ohio 2019) (dismissing DPPA claim where information was used in connection with traffic violation); *Banks v. Dep't of Motor Vehicles for Cal.,* 419 F. Supp. 2d 1186, 1194 (C.D. Cal. 2006) (dismissing DPPA claim as "patently frivolous" where information was used to mail a notice concerning a traffic ticket); *Buxton v. Hartin Asset Mgmt., LLC*, 1:22-CV-600, 2023 WL 4861724, at *8 (W.D. Mich. July 31, 2023) (dismissing DPPA claim where information was used to collect on a debt).

This is simple common sense—in requesting payment and initiating a potential dispute resolution procedure, Defendants acted in anticipation of potential litigation. This is not only self-evident from the face of the PPM notices and Oxygen XL letter, but also clearly prescribed by Florida statute and federal law. Fla. Stat. § 715.075(1)(d) (parking charge notices must include a "method to appeal," and such "appeal process must use a neutral third-party adjudicator."); 15

U.S.C. § 1692g(a)(3)-(4) (debt collection letters must include a statement that the debtor can "dispute[]" the debt).

Thus, the PPM notices and Oxygen XL letter repeatedly disclose that Plaintiffs can dispute or appeal the charge, and thereby initiate the precise adjudication contemplated by Fla. Stat. § 715.075(1)(d), 15 U.S.C. § 1692g(a)(3)-(4), and DPPA § 2721(b)(4). DE 10, Exs. A and B at 1 ("**Important:…You have the right to dispute the debt. Disputes can be made online at www.parkinginvoice.com**."); *id.* at 2 ("DISPUTES PROCEDURE:…you can file a dispute at **www.parkinginvoice.com**. This will ensure your Parking Charge Notice is put on hold..."); *id.*, Ex. C at 1 ("**How can you dispute the debt? Call or write to us by 2024-08-17, to dispute all or part of the debt**."); *id.* at 1 (perforated slip to "**dispute the debt**.").

As Defendants only used Plaintiffs' information to initiate a potential adjudicatory procedure, there can be no doubt such use was authorized by DPPA § 2721(b)(4). Indeed, this is precisely what the court found in *City of Tallahassee*, 2012 WL 5407280, at *1-2, when it dismissed nearly identical DPPA claims. In *City of Tallahassee*, the defendant used DMV information to send notices to drivers who ran red lights. *Id.* Much like here, if the driver paid the required amount, "nothing else comes of it," but if they did not, defendant could "initiate an" "informal" "administrative process." *Id.* Just like the court found in *City of Tallahassee*, these facts alone require dismissal: since Defendants' "notice initiates a process that is informal but that is nonetheless an administrative proceeding, [it] bring[s] the disclosures within paragraph (4)." *Id.*

### ii.    PPM and Oxygen XL's Use of Plaintiffs Information Was Authorized by Florida Law, and Compliant with DPPA Subsection (14)

DPPA also expressly permits the use of DMV information "[f]or any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14). In pleading that Defendants only

used Plaintiffs' information to send a "parking charge notice" and collect on the debt, Plaintiffs concede both points. DE 10 ¶¶ 19, 21, 24, 26, 36, 38, 41. The PPM notices and Oxygen XL letter are specifically authorized by Florida law and "related to the operation of a motor vehicle." .

### a. PPM's Conduct was Expressly Authorized by Florida Statute

Fla. Stat. § 715.075 provides an extensive regulatory framework clarifying the precise permissible boundaries for parking charge notices. *Id.* § 715.075(1)(a)-(d) (the "owner or operator of a private property used for motor vehicle parking" may "mail[]" an "invoice for parking charges," subject to certain conditions). There is no allegation that PPM failed to comply with these conditions. On the contrary, PPM included the precise language required by statute. *Compare id.* § 715.075(1)(b); *with* Ex. A and Ex. B at 2. Additionally, as required by Fla. Stat. § 715.075(1)(d), PPM included a method to "file a dispute." Ex. A and B at 2. Lastly, PPM adhered to Fla. Stat. § 715.075(1)(c)'s requirement that notices be mailed within 5 business days of the violation. *Id.* at 1 (detailing notice dates within 5 business days of the violation dates).

The Florida Legislature has made clear that these regulations are comprehensive—so long as they are complied with, parking charge notices are permissible and expressly authorized. Fla. Stat. § 715.075(2) ("Any [] ordinance or regulation" "restricting or prohibiting a right of a private property owner or operator" to mail parking charge notices "is null and void."). Fla. Stat. § 715.075 even comprehensively delineates the few impermissible uses of a driver's "personal information." *Id.* § 715.075(5) (a private parking operator "may not sell, offer to sell, or transfer to another person for sale any [driver] information."). There is no allegation here that PPM engaged in this narrowly prohibited conduct—on the contrary, Plaintiffs concede that PPM only used Plaintiffs' information to seek payment for private parking. DE 10 ¶¶ 19, 21, 24, 26, 36, 38.

*City of Tallahassee*, 2012 WL 5407280, is directly on point, as that defendant also obtained

DMV information in connection with a Florida statute. In *City of Tallahassee*, the defendant only obtained the plaintiff's information in connection with a red-light program that was authorized by statute. *Id.* at *1 (citing Fla. Stat. § 316.0083). Much like here, the statute authorized the defendant to send notices of red-light violations, although the statute did not explicitly authorize using DMV information to send those notices. Fla. Stat. § 316.0083. Nonetheless, the court held that since "the red-light program is specifically authorized by Florida law and relates to the operation of motor vehicles, [this] bring[s] the disclosures within paragraph (14)." *City of Tallahassee*, 2012 WL 5407280, at *2. Here too, since the PPM Nonpayment Notices were "specifically authorized by Florida" statute, (*id.*), they are permissible under § 2721(b)(14).

### b. Oxygen XL's Conduct was Expressly Authorized by Florida Law

In seeking to collect debts on behalf of PPM (DE ¶¶ 11), Oxygen XL was only acting as PPM's agent. Since PPM's conduct was expressly authorized by Florida statute, Oxygen XL, who only acted on behalf of PPM, is entitled to the benefit of the same statute, Fla. Stat. § 715.075. *See U.S. v. Schaltenbrand*, 930 F.2d 1554, 1560 (11th Cir. 1991) ("An agent has 'actual' authority to bind the principal where the principal has specifically granted the agent the power to do so… An agent has 'apparent' authority to bind the principal where the principal has held out the agent as having such authority or has permitted the agent to represent that he has such authority."); *Leaser v. Prime Ascot, L.P.*, No. 2:20-CV-02502-DJC-AC, 2024 WL 3011226, at *5 (E.D. Cal. June 12, 2024) ("The agent-immunity rule provides that where an agent is acting within the scope of its authority on behalf of a corporation, the agent is "one and the same" as the corporation."); *Thornburg v. Superior Ct.*, 41 Cal. Rptr. 3d 156, 162 (2006), *as modified on denial of reh'g* (Apr. 20, 2006) ("When agents and employees are acting in their official capacities on behalf of their principals and not as individuals for their own advantage, their acts are generally privileged and

do not give rise to liability in tort or under statutes which impose duties on their principals."). Here, Oxygen XL had both actual authority in that PPM specifically granted it the power to send the collection letter to Remy as well as apparent authority because the letter specifically states that Oxygen is trying to collect a debt owed to PPM. *See* Ex. C ("We are trying to collect a debt that you owe to Professional Parking Management Corp.").

Additionally, Florida law clearly sets forth via statute (the FCCPA) the permissible parameters of debt collection practices. The FCCPA lists a whopping nineteen prohibited practices, which comprehensively restrict everything from the time debt collection efforts can take place (FCCPA § 559.72(17)) to the appropriate dispute resolution procedures a debt collector must follow. *Id.* § 559.72(6). Much like Fla. Stat. § 715.075, the FCCPA even bars debt collectors from giving the false impression that they are a governmental entity. *Id.* § 559.72(10). Notably, Plaintiffs do not allege (nor could they) that Oxygen XL engaged in any of the prohibited practices under the FCCPA or failed to comply with any of the FCCPA's requirements. On the contrary, Oxygen XL followed the precise requirements of the FCCPA. Oxygen XL's collection letter does not give the appearance that it is authorized, issued, or approved by a governmental agency. *Compare* § 559.72 (1) and (10); *with* Oxygen XL's collection letter (Ex. C). Additionally, Oxygen XL did not: call Remy between the hours of 9 p.m. and 8 a.m. (*see* § 559.72(17)); communicate with anyone other than Remy (*see* § 559.72(4), (5), (6), (7)); refuse to identify itself or PPM (*see* § 559.72(15)); communicate under the guise of an attorney (*see* § 559.72(11)); or use profane, obscene, vulgar, or willfully abusive language in communicating with Remy (*see* § 559.72(8)).

Of course, Plaintiffs are well aware of the FCCPA, and bring an FCCPA claim against PPM. But tellingly, they do not bring one against Oxygen XL, thereby acknowledging Oxygen XL's compliance with Florida law. In instead relying on DPPA to make the contorted argument

that Oxygen XL is still somehow non-compliant, Plaintiffs have disregarded the clearly expressed will of the Florida legislature, which, via the FCCPA, authorized Oxygen XL's conduct.

### c.  Plaintiffs' *Per Se* FDUTPA Claim Must Be Dismissed

Plaintiffs also bring a FDUTPA claim (Count IV) against both Defendants, alleging that Defendants violated the FDUTPA by violating DPPA. DE 10 ¶¶ 112-130. But as discussed *supra*, Defendants did not violate DPPA, and only acted in accordance with Florida law. Thus, for the same reasons their DPPA claim fails, Plaintiffs' *per se* FDUTPA claim must be dismissed. *See Fox v. Ritz-Carlton Hotel Co., LLC*, No. 17-CV-24284, 2022 WL 6566991, at *10 (S.D. Fla. Aug. 11, 2022), *report and recommendation adopted*, No. 17-24284-CIV, 2022 WL 4462060 (S.D. Fla. Sept. 26, 2022) ("A *per se* FDUTPA violation requires a violation of a predicate statute."); *In re Mona Lisa at Celebration, LLC*, 436 B.R. 179, 208 (Bankr. M.D. Fla. 2010) ("Because the Court has found that Mona Lisa did not violate any statute that could serve as a predicate to establish a per se violation of FDUTPA, plaintiffs have no claim under FDUTPA.").

### III.    Plaintiffs Have Failed to Adequately Plead Additional Claims Against PPM

Plaintiffs' remaining claims are asserted against PPM. Both Plaintiffs bring an FCCPA claim (Count II) and another FDUTPA claim (Count III). Plaintiff Cicale brings yet another FDUTPA claim, alleging that PPM improperly charged convenience fees for credit card payments (Count V). All of these claims must be dismissed.

### A.    Plaintiffs Fail to Allege Valid FDUTPA Claims Against PPM

To sustain a FDUTPA claim, Plaintiffs must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." At the outset, Remy does not and cannot plead actual damages. She never paid. *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019). An "unfair practice" is "one that 'offends established public policy' and one that is

'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* Much like DPPA, "FDUTPA does not apply to '[a]n act or practice required or specifically permitted by federal or state law.'" *Id.* (quoting Fla. Stat. § 501.212(1)); *BJ's Wholesale Club, Inc. v. Bugliaro*, 319 So. 3d 711, 717 9 (Fla. 3d DCA 2021); *Ezcurra v. Monsanto Co.,* 2020 WL 5491428, at *2 (S.D. Fla. Aug. 7, 2020).

As in its DPPA allegations, Plaintiffs rely solely on alleged conduct that is expressly authorized by Florida law. First, Plaintiffs allege that in PPM's notices, PPM held itself out as an "arm of government" rather than a "private company." DE 10 ¶¶ 5-6. But the PPM notices say the opposite: **THIS INVOICE IS PRIVATELY ISSUED, IS NOT ISSUED BY A GOVERNMENTAL AUTHORITY, AND IS NOT SUBJECT TO CRIMINAL PENALTIES**." *Id.*, Exs. A and B; *see also Hunt Ridge at Tall Pines, Inc. v. Hall*, 766 So. 2d 399, 401 (Fla. Dist. Ct. App. 2000) ("Where complaint allegations are contradicted by exhibits attached to the complaint, the plain meaning of the exhibits control and may be the basis for a motion to dismiss."). This unambiguous language, in all caps and bold, could not be clearer. Moreover, it is the <u>exact</u> language the Florida legislature requires for such a notice. *See* Fla. Stat. 715.075(1)(b). It is simply absurd to suggest that PPM engaged in deceptive, unfair or unconscionable conduct when it expressly followed Florida law.

Next, Plaintiffs complain that PPM improperly threatened to "tow and 'boot' vehicles if not paid," when that is, according to Plaintiffs, "a legal right that belongs exclusively to the government." DE 10 ¶ 6. But again, this is pure invention—Florida law explicitly authorizes a private property owner or operator to "tow[] or remov[e] [] any vehicle or vessel from private property without the consent of the registered owner," subject to certain conditions. Fla. Stat. § 715.07(2)(a). This statute even specifically authorizes "towing" a vehicle from a "parking lot in

which the vehicle [] is not lawfully parked," subject to certain conditions.[3] *Id.* § 715.07(2)(a)(3). Moreover, there are local ordinances that allow for the booting of vehicles on private property. *See* Broward County Code of Ordinances Section 20-176.19(a)(2) ("Persons may tow or immobilize a vehicle without the prior written consent of the vehicle owner upon the written instruction of the property owner on whose property the unauthorized vehicle is parked," subject to certain requirements). The PPM notices merely recite this legal right, stating that if Plaintiffs failed to pay for parking, towing or booting "**MAY RESULT**." DE 10, Exs. A and B.

Plaintiff Cicale also argues that PPM's $4.99 convenience fee was "unlawful." DE 10 ¶¶ 131-147. But Cicale was under no obligation to incur this fee. On the contrary, PPM clearly informed Plaintiffs that they could avoid the fee "by mailing a check," and even included a perforated slip for mailed payments. *Id.*, Exs. A and B at 1-2.

Regardless, PPM was statutorily entitled to set fees in connection with its private parking lot. Fla. Stat. § 715.075 (1)(a). And it was certainly entitled to offer Plaintiffs *the option* of incurring a $4.99 convenience fee in exchange for the benefit of being able to pay online or by phone. *Pincus v. Am. Traffic Sols., Inc.,* 333 So. 3d 1095, 1097 (Fla. 2022) (dismissing claim based on convenience fee since the fee benefited plaintiff by allowing them to, *inter alia*, avoid procuring "postage and a check or money order," "avoid[] the risk of his payment being delayed, stolen, or lost en route," and "afforded [him] more time to make the payment because it was instantaneous."). Even mandatory service fees do not constitute unfair practices where the defendant discloses them. *Berry v. Budget Rent A Car Sys., Inc.,* 497 F. Supp. 2d 1361, 1368 (S.D. Fla. 2007) (where a fee is "itemiz[ed]" and "clearly disclosed," it "is not unfair or deceptive); *Costa v. Kerzner*

---

[3] Plaintiffs do not even mention these conditions or offer anything to suggest that PPM failed to meet them. Plaintiffs also never allege that PPM actually attempted to tow their or any other vehicle.

*International Resorts, Inc.,* 11-60663-CV, 2011 WL 2519244, at *2 (S.D. Fla. June 23, 2011) ("mandatory" "service fee" was inactionable since "nothing was misrepresented or deceptive."); *Maor v. Dollar Thrifty Auto. Grp., Inc.,* 15-22959-CIV, 2018 WL 4698512, at *6 (S.D. Fla. Sept. 30, 2018) ($15 administrative fee was not deceptive where it was "disclosed."). As PPM clearly disclosed the purpose of its optional and beneficial convenience fee, there is nothing unfair or deceptive about it.

Plaintiffs argue otherwise, citing the Dodd-Frank Act's Durbin Amendment (DE 10 ¶ 138),[4] which limits transaction fees imposed by debit card or credit card issuers. 15 U.S. Code § 1693o–2(a)(2) (limiting "the amount of any interchange transaction fee that an issuer may receive or charge."); *see also id.* § 1693o-2(c)(9) (defining "issuer" as "any person who issues a debit card, or credit card…"). The Durbin Amendment only applies to financial institutions that issue debit cards or credit cards, and have $10 billion or more in assets. *Id.*; *see also id.* § 1693o-2(a)(6)(A) ("This subsection shall not apply to an issuer that, together with its affiliates, has assets of less than $10,000,000,000."). PPM, a private parking operator, is, of course, neither a debit or credit card issuer, nor a financial institution with $10 billion or more in assets.

### B.  Plaintiffs Have Failed to Adequately Plead a FCCPA Claim Against PPM

#### i.  Plaintiffs Fail to State a Claim for Harassing Conduct Under § 559.72(7).

Plaintiffs bring a claim under FCCPA § 559.72(7), which states that "[i]n collecting consumer debts, no person shall "[w]illfully communicate with the debtor…with such frequency

---

[4] Plaintiffs also cite to a non-binding infographic produced by Visa, for the supposed proposition that credit card transaction fees may be restricted. DE 10 ¶ 139 n.3 (citing infographic). But this infographic clearly lists the four states who "currently prohibit[] or limit[]" such fees—none of those states are Florida. *Id.* Further, Cicale never alleges whether PPM's convenience fee applied to Visa transactions, nor does he contend he used a Visa card to pay the charges. Thus, Visa's non-binding recommendations are especially irrelevant here.

as can reasonably be expected to harass" them, "or willfully engage in other conduct which can reasonably be expected to abuse or harass" them. *Id.* § 559.72(7).

Plaintiffs' claim rests on PPM's supposed "threats to 'tow' and 'boot'" their vehicle, (DE 10 ¶ 90), but as discussed *supra*, PPM was well within its rights to have a vehicle towed or booted if its owner failed to pay for parking. Fla. Stat. § 715.07(2)(a); Broward County Code of Ordinances Section 20-176.19(a)(2).  Further, the PPM notices were far from a "threat[]," (DE 10 ¶ 90), but rather, merely stated that towing or booting "***may*** result" if Plaintiffs did not pay for parking and their cars remained at PPM's private parking lot. *Id.*, Exs. A and B at 2. Plaintiffs' characterization of this as a "threat" is simply implausible—indeed, by the time each Plaintiff received the PPM notices, their cars were no longer on PPM's lot (and hadn't been for at least three days). *Id.*

Clearly, the single PPM notice sent to each Plaintiff, which only accurately recited PPM's legal rights, was not communicated "with such frequency as can reasonably be expected to harass the debtor," nor could it otherwise "reasonably be expected to abuse or harass the debtor." Fla. Stat. § 559.72(7); *Bonner v. Radius Glob. Sols.,* 8:19-CV-3036-KKM-TGW, 2021 WL 3169134, at *5-6 (M.D. Fla. July 27, 2021) (a single debt collection letter is insufficient to sustain a FCCPA claim) (citing *Elmore v. Ne. Fla. Cred. Bureau, Inc.,* 3:10-CV-573-J-37JBT, 2011 WL 4480419, at *4 (M.D. Fla. Sept. 27, 2011) (a "single letter does not rise to a degree of harassing, oppressing, or abusing nature.")); *Ross v. Chisholm*, 05-61238-CIV, 2006 WL 8432311, at *9 (S.D. Fla. Apr. 28, 2006) ("A single voicemail would not violate [section 7].")); *Savage v. Seterus, Inc.,* 2:20-CV-32-FTM-38NPM, 2020 WL 2219194, at *4 (M.D. Fla. May 7, 2020) (sending "two letters over four months is not frequent enough to constitute abuse or harassment.").

In only sending a letter, PPM employed the most "minimally intrusive means of

communication." *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp. 3d 1294, 1305 (M.D. Fla. 2016) (dismissing FCCPA claim where one debt collection letter was sent *per month*, except for one month where two letters were sent). The letters' content is similarly innocuous, containing only dry, legalistic language which fully informs Plaintiffs of their rights, and provides an easy means for Plaintiffs to pursue those rights. *See, e.g.,* DE 10, Exs. A and B at 1 ("**You have the right to dispute the debt. Disputes can be made online at <u>www.parkinginvoice.com</u>.**"). As this single letter did not contain any "abusive language, did not threaten [the plaintiffs], and did not contact [the plaintiffs'] friends, co-workers or family members," it is "insufficiently frequent or harassing as to establish a claim under section 559.72(7)." *Leahy-Fernandez*, 159 F. Supp. 3d at 1305; *Daley v. Bono*, 420 F. Supp. 3d 1247, 1260 (M.D. Fla. 2019) (dismissing claims of 22 letters from 4 defendants over 3.5 years).

Florida courts have dismissed FCCPA claims with far stronger allegations that stand in stark contrast to PPM's innocuous conduct. *Lawrence v. FPA Villa Del Lago, LLC*, 584 F. Supp. 3d 1105, 1115 (M.D. Fla. 2022) ("fourteen harassing debt collection communications."); *Desmond v. Accounts Receivable Mgmt., Inc.,* 72 So. 3d 179, 181 (Fla. 2d DCA 2011) (eighteen telephone calls in three months); *Schauer v. Morse Operations, Inc.,* 5 So. 3d 2, 5 (Fla. 5th DCA 2009) (seven telephone calls in six months, including one call where defendant threatened that plaintiff "would be in 'big trouble,' if he did not repay the loan." Holding: although this "could be termed a threat," it could not sustain a FCCPA claim); *Lardner v. Diversified Consultants, Inc.,* 17 F. Supp. 3d 1215, 1226 (S.D. Fla. 2014) (no harassment from 132 calls over eight months, as plaintiff never "request[ed] the communications stop").

### ii.   Plaintiffs Fail to State a Claim Under FCCPA § 559.72(9).

Plaintiffs bring a claim under § 559.72(9), which bars enforcement of a debt one "knows"

"is not legitimate," or "assert[ing] the existence of some other legal right" one "knows" "does not exist." First, Plaintiffs allege that PPM misrepresented its right to tow their vehicles (DE 10 ¶ 90), but again, as discussed *supra*, PPM was statutorily authorized to have any unlawfully parked vehicle towed. Fla. Stat. § 715.07(2)(a). And even if PPM did misrepresent this right (which it did not), PPM certainly did not ***knowingly*** misrepresent it, as required for Plaintiffs to survive dismissal. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010) (plaintiff must plead actual knowledge to survive dismissal); *Schauer,* 5 So. 3d at 6 (dismissal is required even if defendant "should have known" their statement was false). On this point, Plaintiffs offer just a single, conclusory allegation, that PPM "knew or should have known that [the right to tow] belongs exclusively to the government." DE 10 ¶ 90. But "conclusory allegations of knowledge" are insufficient. *Collins v. Nationstar Mortg., LLC*, 8:21-CV-1169-JLB-SPF, 2022 WL 2829625, at *6 (M.D. Fla. July 20, 2022); *Lima v. Bank of Am., N.A.*, 249 F. Supp. 3d 1308, 1313 (S.D. Fla. 2017) ("The plaintiff cannot merely plead that the defendant had knowledge, but instead must plead sufficient factual allegations to show how the defendant had that knowledge."). And they are certainly insufficient to override PPM's reasonable reliance on Fla. Stat. § 715.07(2)(a)(3), which justified PPM's (correct) belief that it could have a vehicle towed if it failed to pay for parking.

Next, Plaintiffs appear to allege that PPM attempted to collect an illegitimate charge. DE 10 ¶ 92. Yet even if Plaintiffs' charges were illegitimate (they were not), Plaintiffs would need to plead PPM ***knew*** they were illegitimate. *LeBlanc*, 601 F.3d at 1192 n.12; *Schauer,* 5 So. 3d at 6. Plaintiffs offer absolutely nothing, conclusory or otherwise, suggesting that PPM knew its charges were illegitimate. On the contrary, Mr. Cicale concedes he failed to pay for parking (DE 10 ¶¶ 22-24), thereby conceding the charge's legitimacy. As for Ms. Remy, she concedes she used PPM's

private lot for 32 minutes before exiting without paying. *Id.* ¶¶ 34-35. Since PPM was statutorily entitled to impose "rules and rates" at its private lot and impose "charges for violating [those] rules," it was entitled to charge Ms. Remy for using its lot for 32 minutes, regardless of whether she parked or simply drove around. Fla. Stat. § 715.075 (1)(a).

Regardless of the fact that these charges were legitimate, at minimum, Ms. Remy failed to plead that PPM knew its charges were illegitimate. PPM's notice provided Ms. Remy with timestamped photographs proving her vehicle was indeed in PPM's private lot for 32 minutes, and that nonetheless, she never paid to use the lot. PPM had every reason to believe that Ms. Remy failed to pay for parking, and at minimum, it certainly did not have actual knowledge proving otherwise. As Ms. Remy did not even try to plead actual knowledge, her claim must be dismissed.

Finally, Plaintiffs vaguely quibble with the amount charged by PPM, contending it was "exorbitant" and "unlawful." DE 10 ¶¶ 21.  This vagueness alone warrants dismissal. *Collins v. Nationstar Mortg., LLC,* 8:21-CV-1169-JLB-SPF, 2021 WL 5999282, at *7 (M.D. Fla. Dec. 20, 2021) (dismissing FCCPA claim where plaintiff only "generally refers to" "'illegitimate charges,'" but did "not identify them with any specificity."). To the extent Plaintiffs' general reference to "unlawful" charges includes the supposedly "illegal" $4.99 convenience fee, (DE 10 ¶¶ 21, 92-93), such fees do not qualify as debts under the FCCPA and cannot sustain a claim. *Turner v. PHH Mortg. Corp.,* 467 F. Supp. 3d 1244, 1247 (M.D. Fla. 2020); *Reid v. Ocwen Loan Servicing, LLC*, 2020 WL 5104539, at *1 (S.D. Fla. May 4, 2020); *Estate of Derrick Campbell v. Ocwen Loan Servicing, LLC*, No. 20-CV-80057-AHS, slip op. at 5 (S.D. Fla. Apr. 30, 2020) (Singhal, J.). And again, PPM was statutorily entitled to impose "rules and rates" at its private parking lot. Fla. Stat. § 715.075(1)(a). Florida courts are clear that where a defendant is entitled by statute to charge certain fees, any attempt to collect those fees is legitimate, and any resultant FCCPA claim must

be dismissed. *Schulte v. Newrez LLC*, 22-81548-CV, 2023 WL 6407601, at *6 (S.D. Fla. Sept. 6, 2023) (dismissing FCCPA claim where debt was authorized by Fed. R. Bankr. P. 3002.1(a)); *Solis v. Client Servs., Inc.,* 11-23798-CIV, 2013 WL 1165838, at *2 (S.D. Fla. Mar. 21, 2013) (FCCPA claims dismissed with prejudice as defendants were collecting a debt for a "statutorily authorized purpose.") (citing 15 U.S.C. § 1681b(a)(3)(A)).

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that Plaintiffs' Amended Complaint be dismissed as against them.

Respectfully submitted,
COZEN O'CONNOR

*/s/ Jason Domark*
Jason Domark, Esq.
Florida Bar No. 880191
jdomark@cozen.com
Hayley H. Ryan, Esq.
Florida Bar No. 1032623
hryan@cozen.com
200 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Tel: (305) 397-0801
Fax: (305) 704-5955
*Counsel for Defendant Professional Parking Management Corporation and YSA ARM LLC d/b/a Oxygen XL*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2024, I served a copy of the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Bret L. Luskin, Jr., Esq.
**Bret Lusskin, P.A.**
1025 E. Hallandale Beach Blvd., Ste 1532
Hallandale Beach, FL 33009
Tel: (954) 454-5841
e-mail: blusskin@lusskinlaw.com
*Counsel for Plaintiff*
Served via transmission of Notice of Electronic Filing generated by CM/ECF

Scott D. Owens, Esq.
**Scott D. Owens, P.A.**
2750 N. 29th Ave., Suite 209A
Hollywood, FL 33020
Tel: (954) 589-0588
E-mail: scott@scottdowens.com
*Counsel for Plaintiff*
Served via transmission of Notice of Electronic Filing generated by CM/ECF

Janet R. Varnell. Esq. (jvarnell@vandlaw.com)
Brian W. Warwick, Esq. (bwarwick@vandlaw.com)
Christopher J. Brochu, Esq.(cbrochu@vandlaw.com)
Pamela G. Levinson, Esq. (plevinson@vandlaw.com)
Jeffrey L. Newsome, Esq. (jnewsome@vandlaw.com)
Varnell & Warwick, P.A.
400 N. Ashley Drive, Suite 1900
Tampa, FL 33602
Tel: (352) 753-8600
*Counsel for Plaintiff*
Served via transmission of Notice of Electronic Filing generated by CM/ECF

*/s/ Jason Domark*