UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-61146-CIV-SINGHAL

PETER CICALE, JR., and FRANCES REMY,
individually, and on behalf of all similarly situated,

    Plaintiffs,
v.

PROFESSIONAL PARKING MANAGEMENT
CORPORATION and YSA ARM LLC d/b/a
OXYGENXL,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants Professional Parking Management Corporation ("PPM") and YSA ARM LLC d/b/a Oxygen XL's ("Oxygen XL") ("Defendants," collectively) Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion") (DE [19]), filed on August 30, 2024.  Plaintiffs Peter Cicale, Jr. ("Cicale") and Frances Remy ("Remy") ("Plaintiffs," collectively) filed their Response in Opposition to Defendants' Motion to Dismiss (the "Response") (DE [34]) on September 20, 2024.  On September 27, 2024, Defendants rebutted with their Reply in Further Support of Their Motion to Dismiss Plaintiffs' Amended Complaint (the "Reply") (DE [38]).  As such, the Motion is ripe for the Court's adjudication.  The Court has reviewed the Motion and is otherwise advised in the premises.

## BACKGROUND

As described in the First Amended Class Action Complaint ("FAC") (DE [10]), Defendant PPM is a private company that operates parking lots and garages across the country.  (DE [10] at ¶ 3).  Defendant Oxygen XL is a debt collector.  *Id.* at ¶ 2.

Through this action, Plaintiffs seek redress from these two Defendants for mailed parking-related materials.  According to Plaintiffs, PPM mails Parking Charge Notices that "mirror government tickets, threaten to 'boot' and 'tow' consumers' vehicles for unpaid citations, impose exorbitant penalties against vehicle owners, charge illegal service fees, and unlawfully threaten various consequences if they do not receive payment immediately."  *Id.* at ¶ 21.  To issue the citation and mail it to consumers, PPM obtains vehicle owners' information by "accessing and examining official motor vehicle records and then searching for the consumer using their license plate number."  *Id.* at ¶ 20.  And if the vehicle owners do not pay the parking citations, PPM enlists and discloses information to Oxygen XL, which, in turn, mails its own letters to vehicle owners to collect payment.  *Id.* at ¶ 12.

Remy entered a parking lot "operated or managed" by PPM on April 14, 2024.  *Id.* at ¶ 33.  She drove around the parking lot for around thirty-two minutes, before exiting the parking lot without parking.  *Id.* at ¶ 35.  Then, on April 18, 2024, PPM sent Remy a parking citation for "$90.00 plus any applicable state sales tax and/or parking surcharge. . ."  *Id.* at ¶ 36; (DE [10-3]).  The citation also noted that, if payment was made within fifteen days of the notice, PPM would "reduce the amount you owe from $90.00 to $55.00 plus any applicable state sales tax and/or parking surcharge."  *Id.* at ¶ 37; (DE [10-3] at p. 2).  The back of the citation contained the following disclaimer:

> **FAILURE TO PAY THIS PARKING CHARGE NOTICE MAY RESULT IN THIS MATTER BEING REFERRED TO COLLECTIONS.  THIS INVOICE IS PRIVATELY ISSUED, IS NOT ISSUED BY A GOVERNMENTAL AUTHORITY, AND IS NOT SUBJECT TO CRIMINAL PENALTIES. UNPAID PARKING CHARGE NOTICES MAY RESULT IN THE VEHICLE BEING BOOTED OR TOWED AT THE OWNER'S EXPENSE.**

*Id.* at ¶ 38; (DE [10-3] at p. 3).  On June 27, 2024, Remy received a letter from Oxygen

XL, attempting to collect on the $90.00 supposedly owed to PPM.  *Id.* at ¶ 41; (DE [10-4]).  For both the citation and letter, Remy alleges that PPM and Oxygen XL had "unlawfully obtain[ed] personal sensitive information about her from the state's motor vehicle database."  *Id.* at ¶ 44.

On January 5, 2024, Cicale parked at a parking lot "operated or managed" by PPM.  *Id.* at ¶ 22.  As characterized in the FAC, Cicale "simply parked in an available parking space, as any driver commonly would, and subsequently drove away."  *Id.* at ¶ 23.  Within a few days, however, Cicale received a parking citation for "$90.00 plus any applicable state sales tax and/or parking surcharge. . ."  *Id.* at ¶ 24; (DE [10-2]).  The citation also noted that, if payment was made within fifteen days of the notice, PPM would "reduce the amount you owe from $90.00 to $55.00 plus any applicable state sales tax and/or parking surcharge."  *Id.* at ¶ 25; (DE [10-2] at p. 2).  The back of the citation contained the following disclaimer:

> **FAILURE TO PAY THIS PARKING CHARGE NOTICE MAY RESULT IN THIS MATTER BEING REFERRED TO COLLECTIONS.  THIS INVOICE IS PRIVATELY ISSUED, IS NOT ISSUED BY A GOVERNMENTAL AUTHORITY, AND IS NOT SUBJECT TO CRIMINAL PENALTIES.  UNPAID PARKING CHARGE NOTICES MAY RESULT IN THE VEHICLE BEING BOOTED OR TOWED AT THE OWNER'S EXPENSE.**

*Id.* at ¶ 26; (DE [10-2] at p. 3).  Cicale paid $94.99 to PPM.  *Id.* at ¶ 27.  Cicale takes issue with PPM's "threats and implied or stated repercussions," and he argues his right to privacy was invaded when PPM "unlawfully obtain[ed] personal information about him from the State's motor vehicle database."  *Id.* at ¶ 28.

To these ends, Plaintiffs present five (5) causes of action: Count I for Violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*; Count II for Violation of the Florida Consumer Collections Practices Act ("FCCPA"), Fla Stat.

3

§ 559.55, *et seq.*; Count III for Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla Stat. § 501.201, *et seq.*; Count IV for *Per* Se Violation of the FDUTPA; and Count V for Violation of the FDUTPA for junk fees. Plaintiffs bring all counts against PPM, but only Counts I and IV are brought against Oxygen XL. Moreover, Plaintiffs link each count with a proposed class category. *See* (DE [10] at ¶ 63) (describing the DPPA Class, FCCPA Subclass, FDUTPA Subclass, *Per Se* Subclass, and Junk Fee Subclass).

## LEGAL STANDARDS

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rather, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012).

A motion to dismiss for lack of standing under Rule 12(b)(1) implicates subject matter jurisdiction. *Mack v. USAA Cas. Ins. Co.,* 994 F.3d 1353, 1359 (11th Cir. 2021). To establish standing, a plaintiff must show "(1) an injury in fact; (2) a causal connection

4

between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *L.M.P. on behalf of E.P. v. Sch. Bd. of Broward Cty., Fla.*, 879 F.3d 1274, 1281 (11th Cir. 2018) (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)). "At the pleading stage, the plaintiff must clearly allege facts demonstrating each of these elements." *Gesten v. Burger King Corp.*, 2017 WL 4326101, at *1 (S.D. Fla. Sept. 27, 2017) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016)). "Motions to dismiss for lack of standing come in two forms, 'facial' and 'factual' attacks." *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.,* 965 F.3d 1210, 1216 (11th Cir. 2020). "When a defendant makes a facial attack on the plaintiff's standing to sue, [the court] must accept as true the well-pleaded allegations in the complaint." *Id.* An order granting a Rule 12(b)(1) motion to dismiss is not a judgment on the merits. *Stalley ex rel. U.S. v. Orlando Reg. Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true*. See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Dismissal of a complaint is also warranted in situations where "it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

Defendants make three broad arguments for dismissal: that Plaintiff Remy does not have standing for her claims; that Counts I and IV should be dismissed, as Plaintiffs do not plead actionable DPPA and FDUTPA claims; and that Counts II, III, and V must be dismissed, as Plaintiffs fail to state adequate FCCPA and FDUTPA claims against PPM. The Court has evaluated each of these arguments below.

### *Plaintiff Remy's Standing*

As a threshold issue, Parties disagree about whether Plaintiff Remy has standing for any of her four claims against PPM and Oxygen XL. Defendants assert she does not, arguing that Remy's FDUTPA and FCCPA claims fail since Remy does not allege that "payment was made, or money or time [was] wasted . . ." (DE [19] at p. 5). They point out that Remy, to this day, has not paid for the parking nor has alleged that she was misled. *Id.* And Defendants contend Remy's DPPA claims cannot stand because Remy has not pled an injury with a common law analog. *Id.* at p. 7.

Plaintiff Remy pushes back, maintaining that she had "suffered concrete injury" because of Defendants accessing her information in the state's motor vehicle records: "an invasion of her privacy that caused her emotional distress." (DE [34] at p. 4). For other concrete injuries suffered, Remy adds intrusion upon seclusion, harassment, and annoyance. *Id.* at p. 8. The bulk of Remy's response focuses on the alleged invasion of privacy in the context of the DDPA, which she argues Defendants violated "for an

6

improper purpose." *Id.* Despite maintaining that she has standing for all four claims, Remy's arguments focus heavily on the DPPA, with the sole mention of either the FCCPA or FDUTPA coming in her description of the Eleventh Circuit's ruling in authority cited by Defendants. The Court agrees with Remy that the case, *Davis v. Professional Parking Management Corp.*, 2023 WL 4542690, can be distinguished from these circumstances. But it does not find Remy's core argument about experiencing concrete injury through invasion of privacy to be persuasive.

For standing, Remy must show: (a) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *L.M.P. on behalf of E.P.*, 879 F.3d at 1281 (citations omitted). An injury can be considered concrete "if it actually exists—that is, if it is 'real, and not abstract.'" *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022). The most obvious concrete harm is "a physical injury or financial loss." *Id.* at 1243. But plaintiffs can also have real injuries when an "alleged harm is intangible." *Id.* For intangible harms, "analogizing to longstanding torts is an important way to determine whether an alleged intangible injury meets the concreteness requirement." *Id.* at 1244 (citing *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204–05). This is where Remy's argument unravels.

Here, there is no suggestion that Remy was injured through a tangible financial loss. And Remy's allegations about harm via intrusion upon seclusion, harassment, distress, and annoyance are purely conclusory. For instance, though Remy references distress, the Complaint is devoid of factual allegations about Remy's supposed distress. The only germane statements are obvious conclusions. *See, e.g.* (DE [10] at ¶ 40)

7

("PPM's invasion of privacy **resulted in distress** to Plaintiff [Remy].  Moreover, PPM's statements asserting a legal right where none exists . . . **caused emotional distress** to Plaintiff.") (bold emphasis added).  This is not sufficient to establish a concrete harm or confer standing on those respective grounds.

Further, Remy's attempt to analogize to an invasion of privacy claim falls short.  Under Florida law, establishing invasion of privacy requires a physical or electronic intrusion "into a 'place' in which there is a reasonable expectation of privacy . . ." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003); *Spilfogel v. Fox Broad. Co.*, 433 Fed. App'x 724, 727 (11th Cir. 2011) ("Florida law explicitly requires an intrusion into a private place and not merely into a private activity.").  Having reviewed precedent from district courts in the Eleventh Circuit, this Court cannot find Defendants accessing motor vehicle records to be an intrusion into a 'place.'  *See Watts v. City of Hollywood, Fla.*, 146 F.Supp. 3d 1254 (S.D. Fla. 2015).  Thus, Remy's claims do not have appropriate standing, and they are dismissed.

### *Counts I and IV*

Defendants argue that Plaintiffs' Counts I and IV for DPPA and FDUTPA claims, respectively, should be dismissed.  Defendants' argument here is straightforward: that the DPPA claim should be dismissed, because rather than show that Defendants used their information for an impermissible purpose, Plaintiffs instead demonstrate that Defendants obtained their information for "an obvious legitimate business purpose."  (DE [19] at p. 8).  And according to Defendants, it logically follows that, since Plaintiffs' DPPA claim must be dismissed, the *per se* FDUTPA claim must be dismissed as well.  *Id.* at p. 15.

In response, Plaintiffs reject that Defendants' conduct "fall[s] within any of the fourteen permissible uses established under the DPPA." (DE [34] at p. 10). Plaintiffs deny that Florida law authorizes Defendants' conduct or that Defendants' use of Plaintiffs' information falls under DPPA's exception for the investigation in anticipation of litigation; on the latter, Plaintiffs maintain that courts should not make such a determination at this stage. *Id.* at p. 12, 15; *see also* 18 U.S.C. § 2721(b)(4). And Plaintiffs propose that, since their DPPA claim should withstand dismissal, so should their *per se* FDUTPA claim. (DE [34] at p. 20, n. 7) ("Defendants move to dismiss Plaintiffs' per se FDUTPA claim in Count IV of the Complaint on the same grounds that they contest Plaintiffs' DPPA claims, *i.e.*, Defendants claim they did not violate DPPA. Consequently, because that argument fails, so too must Defendants' effort to have this Court dismiss Plaintiffs' per se FDUTPA Count.").

Because Parties' dueling positions present a close call, the claims will withstand dismissal for now. At this stage, the Court must evaluate the complaint in a light most favorable to the plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). And Plaintiff had alleged the supposedly impermissible purpose under the DPPA: so that Defendants could "mail [Plaintiffs] its . . . parking citations." (DE [10] at ¶ 82). Though Defendants argue their use of Plaintiffs' information constituted a legitimate business use, their case is unavailing. Here, Defendants reference the DPPA's legislative history, but there is no need to revisit legislative discourse about the statute when the unambiguous nature of the text speaks for itself. Under 18 U.S.C. § 2721(b)(3), personal information may be disclosed "[f]or use in the normal course of business by a legitimate business or its agents, employees, or contractors, **but only**. . ." in two specified

9

conditions—none of which apply here. 18 U.S.C. § 2721(b)(3) (emphasis added). Thus, Defendants' reliance on a broad deference to business use falls flat. The Court is familiar with Parties' conflicting contentions on whether Defendants' conduct can be considered in an 'investigation in anticipation of litigation,' pursuant to 19 U.S.C. § 2721(b)(4), or is shielded by Fla. Stat. § 715.075, but does not feel it would be appropriate to make such determinations at this juncture. The issues may be revisited at the summary judgment stage, but for now, the DPPA claim withstands dismissal. And given the linkage between the DPPA claim and the *Per Se* FDUTPA claim, the latter survives at this stage too.

### *Counts II, III, and V*

Defendants contend that Plaintiffs' Counts II, III, and V, constituting an FCCPA claim and two FDUTPA claims, should be dismissed, arguing these three claims have not been adequately stated. (DE [19] at p. 15). For one, Defendants argue that the conduct Plaintiffs identify for their FDUTPA claims—PPM allegedly presenting itself as an "arm of government[,]" "threaten[ing] to tow and 'boot' vehicles[,]" and charging a $4.99 fee for payments online or by phone—was "expressly authorized by Florida law." *Id.* at p. 16–17 (quotations cleaned up). *See* (DE [10] at ¶ 101, 136). Second, Defendants assert that Plaintiffs have not established an FCCPA claim, disputing Plaintiffs' characterization of PPM's notices as threatening and harassing. (DE [19] at p. 19). Relatedly, Defendants reject that PPM misrepresented its right to tow vehicles or attempted to collect an illegitimate charge, while also positing that, even assuming it did misrepresent those rights, PPM did not do so "knowingly." *Id.* at p. 21.

Plaintiffs suggest Defendants' focus on the "frequency of communications" is too

restrictive. (DE [34] at p. 19). Instead, Plaintiffs suggest that the FCCPA's prohibitions would cover PPM's broader alleged conduct in these circumstances. *Id.* And though Plaintiffs concede that PPM could lawfully tow or boot Plaintiffs' vehicles "so long as those vehicles remained on PPM's property[,]" they reiterate their contention that Defendants violated the FDUTPA because PPM had sent notices "long after" the cars had left PPM property; because the cars were no longer on PPM's lots, Plaintiffs state the notices usurped a "right that only belongs to the government." *Id.* at p. 21–22. In sum, Plaintiffs believe they provide a sufficient basis for their FCCPA and FDUTPA claims and that Defendants' arguments should not be resolved at this stage. The Court agrees as to Counts II and III, but not Count V.

In opposing Plaintiffs' FCCPA claim (Count II), PPM references the frequency of Parties' communications and the notices' language. PPM is eager to emphasize that it sent a "single" notice to each Plaintiff. (DE [19] at p. 20). But much of PPM's included authority feature rulings at the summary judgment stage. To be certain, PPM does include examples where other courts have dismissed FCCPA claims over frequency considerations at this same juncture, but these cases are inapposite. Here, Plaintiffs' factual allegations exceed the narrow focus on the number of mailings or notices' texts. Hence, the FCCPA claim will outlast dismissal for now, though it can be revisited on a Rule 56 Motion. In a similar vein, Plaintiffs' FDUTPA claim (Count III) also survives dismissal; whether Defendants' alleged conduct was "expressly authorized by Florida law" may be resolved at a later stage. (DE [19] at p. 16).

Nonetheless, the Court is not persuaded that Plaintiffs' FDUTPA claim for 'junk fees' should withstand dismissal. For one, Plaintiffs take for granted that the $4.99

surcharge is "unlawful" through conclusory allegations about Florida law. (DE [10] at ¶ 136–37). Second, though Plaintiffs vaguely allege the surcharge is contrary to the Durbin Amendment, they decline to rebut Defendants' argument about the Durbin Amendment's inapplicability. *See Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo. Ass'n, Inc.,* 2016 WL 5661636, at *3 (S.D. Fla. Sept. 30, 2016) (holding plaintiff "impliedly concede[d]" a point by failing to address defendant's argument). Third, Plaintiffs acknowledge that Defendants "may be" statutorily entitled to set fees, while also failing to explain how Defendants would be bound to "merchants' rules of the major credit and debit card companies. . ." (DE [34] at p. 22; DE [10] at ¶ 139). The $4.99 surcharge on credit and debit card transactions may indeed violate the goals or spirit of the Dodd-Frank Wall Street Reform and Consumer Protection Act, but this policy argument is insufficient for a FDUTPA claim. Count V is dismissed.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (DE [19]) is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. Plaintiff Remy's claims are **DISMISSED WITHOUT PREJUDICE**. This dismissal does not affect the claims of other Plaintiffs in this action.
2. Count V (Violation of FDUTPA) is **DISMISSED WITHOUT PREJUDICE.**
3. The remaining claims against Plaintiff Cicale survive as outlined in this Order.
4. Plaintiff Cicale should file a Second Amended Class Action Complaint in accordance with this Court's Order by **September 19, 2025.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 11th day of September 2025.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF