**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| **PETER CICALE, JR., individually, and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **CASE NO.: 0:24-cv-61146-AHS** |
| **v.** | **CLASS ACTION** |
| **PROFESSIONAL PARKING MANAGEMENT CORPORATION, a Georgia corporation,** | |
| **Defendant.** | |

<u>**SECOND AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiff, PETER CICALE, JR. ("Plaintiff Cicale") on behalf of himself and all others similarly situated, alleges the following based upon personal knowledge, upon information and belief, and the investigation of the undersigned counsel as to all other matters, and brings this Second Amended Class Action Complaint against Defendant Professional Parking Management Corporation ("PPM"), and in accordance with Rule 15(a)(1)(A) states as follows:

## I.     NATURE OF THE ACTION

1.     This Complaint seeks redress for a class of vehicle owners who were unlawfully mailed parking citations by Defendant PPM, and whose personal information PPM illegally obtained and used in flagrant violation of federal law.

2.     PPM is a privately owned company that operates parking lots and garages throughout the United States.

3.      PPM's business model ostensibly involves charging drivers to park their vehicles in its facilities.  In reality, however, PPM's business is about mailing parking citations to vehicle owners and threatening them with severe consequences if they do not pay exorbitant sums demanded in PPM's citations.

4.      The citations at issue are designed to look like official parking citations, despite being "issued" by a private company rather than an arm of government.

5.      PPM's citations illegally threaten to tow and "boot" vehicles if not paid, a legal right that belongs exclusively to the government.

6.      Worse yet, the citations are addressed using information PPM illegally obtains from official motor vehicle records, in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*

7.      The DPPA prohibits obtaining, disclosing, or using personal information from a motor vehicle record except for the statute's enumerated permissible uses, one of which is use with the driver's express consent. *Id.*

8.      PPM does not obtain prior express written consent from vehicle owners prior to invading their privacy, in violation of the federal statute.

9.      Notably, PPM seeks to obtain the written consent of cited vehicle owners at the time of payment, *well after* it has already violated federal law, by requiring payors to agree to the "terms and conditions" on its payment website:[1]

**BY CONSENTING TO THESE TERMS AND CONDITIONS, YOU ARE ADDITIONALLY PROVIDING YOUR WRITTEN CONSENT TO PPM OBTAINING YOUR PERSONAL**

---

[1] *See* https://pkg-shared-files.s3.amazonaws.com/brands/etico/docs/terms.pdf p. 1-2 (last viewed: September 19, 2025). PPM evidently changed this document since the filing of the initial Complaint.

**INFORMATION PURSUANT TO THE DPPA, FOR ANY DPPA-PERMITTED PURPOSES.**

10.     PPM knowingly, willfully, or recklessly obtained, disclosed, and/or used Plaintiff's and the Class Members' personal sensitive information for a purpose not permitted by the DPPA. As a result, Plaintiff seeks to represent a class of persons who were mailed such parking citations and whose personal information PPM illegally obtained, disclosed, and used in violation of the DPPA.

**A.     Introduction to the DPPA.**

11.     In 1994, Congress enacted the DPPA as a critical measure to protect the personal information of drivers in the United States. This federal law was designed to address growing concerns about the misuse of personal data collected by state departments of motor vehicles ("DMV"). By regulating the disclosure and use of personal information contained in motor vehicle records, the DPPA ensures that this sensitive data is only accessible for legitimate and specified purposes. The act's primary goal is to safeguard individuals' privacy and prevent the exploitation of their personal information for purposes such as solicitation, marketing, and identity theft.

12.     Historically, the DPPA was a response to several high-profile incidents where personal information obtained from DMV records was used for harmful purposes, including intimidation and harassment. The act was championed by Congress as a necessary step to enhance privacy protections in an increasingly data-driven society. Its passage marked a pivotal moment in the evolution of privacy law in the United States, setting a precedent for subsequent legislation aimed at protecting personal data.

13.     The effect of the DPPA has been profound, establishing a legal framework that mandates strict confidentiality and restricts access to motor vehicle records. Under the DPPA,

personal information such as names, addresses, and Social Security numbers cannot be disclosed without the driver's written consent, except for certain permitted uses, such as law enforcement activities. The act imposes penalties for unauthorized access and misuse of this data, thereby deterring potential abusers and reinforcing the importance of data privacy. By providing a clear legal standard, the DPPA aims to reduce the risks associated with the widespread availability of driver information.

14. Regrettably, there are still occasions where unscrupulous actors like PPM disregard the DPPA and abuse the personal information contained in motor vehicle records for illicit purposes.  This is one such case.  PPM's entire business model is based on flouting the DPPA and abusing official motor vehicle data to harass, intimidate, deceive, and ultimately defraud consumers.  This action aims to stop PPM's unlawful conduct and compensate consumers whose privacy rights have been blatantly violated.

## II.  JURISDICTION AND VENUE

15. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. The DPPA provides a federal cause of action, 18 U.S.C. § 2724(a). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as the state law claims form part of the same case or controversy as Plaintiff's claims under the DPPA.

16. This Court has personal jurisdiction over PPM because it regularly transacts business within the State of Florida, and because it is headquartered in Broward County, Florida.

17. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c).

### III.    PARTIES

18.   Plaintiff PETER CICALE, JR., is a natural person and resident of Broward County, Florida, and is a citizen of the State of Florida.

19.   Defendant PPM is a Foreign For-Profit Corporation with its headquarters located in Broward County, Florida.

### IV. FACTS

**A.    PPM's Business Model**

17.   PPM is a Georgia corporation primarily managing and operating parking lots and garages owned by third parties throughout Florida and the United States.

18.   PPM utilizes camera-based license plate detection and recognition technology to manage its parking lots and garages. This technology captures, stores, and transmits images of the license plates on consumers' vehicles entering and exiting its parking facilities.

19.   As a vehicle exits a PPM parking facility, it captures an image of the consumers' license plate and then utilizes those images to determine whether the consumer associated with the vehicle tendered any payment prior to their departure. Once PPM determines that a fee is due, it then mails a document entitled "**PARKING CHARGE NOTICE – DO NOT IGNORE**" to the registered owner of the vehicle.

20.   In order to mail this document, PPM must first identify the vehicle owner and obtain his or her sensitive information, including their mailing address.  PPM locates this information by illegally accessing and examining official motor vehicle records and then searching for the consumer using their license plate number.  PPM uses this illegally obtained information to issue the citation and mail it to the consumer.

21.     PPM's "Parking Charge Notices" mirror government tickets, threaten to "boot" and "tow" consumers' vehicles for unpaid citations,[2] impose exorbitant penalties against vehicle owners, charge illegal service fees, and unlawfully threaten various consequences if they do not receive payment immediately. PPM also sets tight deadlines by which the vehicle owner must remit payment to avoid even more onerous penalties. In consequence, the vehicle owner typically pays the sum demanded in the citation and has suffered an injury by way of PPM's invasion of their privacy.

**B.      PPM's Illegal Parking Citation to Plaintiff Cicale**

22.     On January 5, 2024, Plaintiff Cicale parked at a private parking lot located at 915 N. Ocean Drive, Hollywood, FL 33019, which, at all relevant times, was operated or managed by PPM.

23.     At the time he entered the parking lot, there was no parking attendant or gate. Plaintiff Cicale simply parked in an available parking space, as any driver commonly would, and subsequently drove away.

24.     On or about January 8, 2024, PPM mailed Plaintiff Cicale a citation ominously entitled "**PARKING CHARGE NOTICE – DO NOT IGNORE**." This citation stated that Plaintiff Cicale owed PPM a "parking charge" of $90.00, "plus any applicable state sales tax and/or parking surcharge." A true and correct reproduction of the aforementioned citation is attached hereto and incorporated herein as Exhibit A.

25.     PPM's illegal citation further stated that "if payment is made within 15 days of the Notice date, Professional Parking Management will reduce the amount you owe from $90.00 to $55.00 plus any applicable state sales tax and/or parking surcharge." *Id.*

---

[2] A legal right that is only available to the government or a third party hired by the government.

26. On the back of the citation, in bold, capital letters, PPM threatened Plaintiff Cicale as follows: "**FAILURE TO PAY THIS PARKING CHARGE NOTICE MAY RESULT IN THIS MATTER BEING REFERRED TO COLLECTIONS … UNPAID PARKING CHARGE NOTICES MAY RESULT IN THE VEHICLE BEING BOOTED OR TOWED AT THE OWNER'S EXPENSE.**" *Id.*

27. After receiving the citation, Plaintiff Cicale was concerned about PPM's threats and implied or stated repercussions and paid $94.99 to PPM.

28. PPM injured Plaintiff Cicale when it invaded his right to privacy by unlawfully obtaining personal information about him from the State's motor vehicle database.

29. PPM's invasion of privacy resulted in distress to Plaintiff Cicale.

30. Moreover, PPM's statements asserting a legal right where none exists (PPM's false statement that it has the legal right to "boot" and "tow" consumers' vehicles for unpaid citations) caused emotional distress to Plaintiff Cicale and the Class.

31. PPM's collection of money based on its false statements (that it has the legal right to "boot" and tow consumers' vehicles for unpaid citations) caused harm when Plaintiff Cicale paid money as a result of the illegal citation.

32. PPM injured Plaintiff Cicale and the Class when it invaded their right to privacy by unlawfully obtaining information about them from the State's motor vehicle database.

**C.     Common Allegations to the DPPA Claim**

33. PPM's illegal citations to Plaintiff included a photograph of Plaintiff's license plate, taken by PPM's on-site camera equipment.

34. Upon information and belief, once PPM captured Plaintiff's license plate number, it then unlawfully queried official motor vehicle records to identify Plaintiff and acquire his

sensitive personal information without his written consent, including his home address. PPM then mailed its illegal citation to Plaintiff.

35. PPM never received express written consent prior to accessing personal sensitive motor vehicle information as required by the DPPA, 18 U.S.C. § 2721(b)(13).

36. Plaintiff has never waived his privacy under 18 U.S.C. § 2721(d).

37. Upon information and belief, PPM utilizes these or similar methods to send its illegal citations and collect money from the putative Class Members who entered parking garages or lots managed or operated by PPM throughout Florida and the United States.

38. The DPPA governs the manner by which certain personal information can be accessed or disclosed and imposes penalties for violation of its provisions.

39. Section 2724(a) of the DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains ..."

40. PPM is a "person" within the meaning of 18 U.S.C. § 2725(2).

41. Defendant accessed Plaintiff's "Personal Information" as defined in the DPPA to mean "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725.

42. A "motor vehicle record" is defined in the DPPA to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles…" *Id.*

43.   DPPA Section 2721(b) provides a set of "permissible uses" of personal information. The permissible use exemptions to the DPPA allow the use of such information for a limited number of purposes designed to promote public welfare.

44.   PPM's use of official motor vehicle records to send parking citations to Plaintiff and the Class is not a permissible use of such information under the DPPA.

45.   Defendant's conduct as set forth above caused harm to Plaintiff and the Class Members by violating their statutory rights, invading their privacy of the kind long recognized at common law, and causing distress, harassment and annoyance.

46.   Accordingly, Plaintiff has standing to bring his claims under the DPPA. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("At bottom, the DPPA is aimed squarely at 'the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let alone.''") (quoting William L. Prosser, Privacy, 48 Calif. L. Rev. 383, 389 (1960)).

## V.   CLASS ACTION ALLEGATIONS

47.   Plaintiff brings this case as a class action on behalf of himself and all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) and (b)(3). The proposed Class (the "DPPA Class," "FCCPA Subclass," "FDUTPA Subclass," and "PER SE Subclass," are collectively referred to throughout as the "Class") is defined as follows:

### DPPA Class

All natural persons in the United States whose Personal Information contained in a motor vehicle record, as defined by the DPPA, was obtained or disclosed by Defendant without the Defendant first receiving the person's prior express written consent in the four years preceding the filing of the initial Complaint, through the date of any order granting certification of the class.

**FCCPA Subclass**

All natural persons residing in Florida to whom Defendant PPM mailed a parking citation that is substantially similar to Exhibit A that resulted in PPM receiving a payment from the person, in the two years preceding the filing of the initial Complaint, through the date of any order granting certification of the class.

**FDUTPA Subclass**

All natural persons residing in Florida to whom Defendant PPM mailed a parking citation that is substantially similar to Exhibit A that resulted in PPM receiving a payment from the person, in the four years preceding the filing of the initial Complaint, through the date of any order granting certification of the class.

**PER SE Subclass**

All natural persons residing in Florida to whom Defendant PPM mailed a parking citation that is substantially similar to Exhibit A that resulted in PPM receiving a payment from the person after Defendant impermissibly obtained their Personal Information, as defined by the DPPA, in the four years preceding the filing of the initial Complaint, through the date of any order granting certification of the class.

48.     Expressly excluded from the Class are:

(a)     Any Judge or Magistrate Judge presiding over this action and members of their immediate families;

(b)     PPM and any entity in which PPM has a controlling interest, or which has a controlling interest in PPM and its legal representatives, assigns and successors;

(c)     All persons who properly execute and file a timely request for exclusion from the Class.

49.     Plaintiff reserves the right to amend the Class definition at the Class Certification stage of the litigation if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

**Fed. R. Civ. P. 23(a) Criteria**

50.     Numerosity. The exact number of Class Members is unknown as such information is in the

exclusive control of Defendant. However, due to the nature of the trade and commerce involved, and the size of Defendant's business, Plaintiff reasonably believes the Class consists of easily thousands of consumers, geographically dispersed throughout the United States, making joinder of all Class Members impracticable. Class Members are ascertainable from a review of Defendant's business records.

51.    Commonality.  Common questions of law and fact affect the right of each Class Member and common relief by way of damages is sought for Plaintiff and Class Members. The harm that Defendant has caused or could cause is substantially uniform with respect to Class Members. Defendant either violated the DPPA, the FCCPA, and/or FDUTPA for all Class Members (of each respective Class and Subclass) or none. Common questions of law and fact that affect Plaintiff and the Class Members include, but are not limited to:

(a)    Whether PPM's parking citation is standard and uniform in all relevant aspects for Plaintiff and the Class and materially similar to PPM's citations contained in Exhibits A;

(b)    Whether Defendant obtained the express written consent of Plaintiff and the Class prior to accessing their Personal Information;

(c)    Whether Defendant had any permissible purpose within the meaning of the DPPA when they obtained the Personal Information of Plaintiff and the Class;

(d)    Whether Defendant invaded the privacy of Plaintiff and the Class when it illegally obtained their Personal Information;

(e)    Whether PPM used the illegally obtained Personal Information to mail its parking citations to Plaintiff and the Class;

(f)    Whether Defendant obtained, disclosed, or used the Personal Information of Plaintiff and the Class in violation of the DPPA and is therefore liable to Plaintiff and the Class;

(g)    Whether Defendant unlawfully represented to consumers it had the authority to tow and boot their vehicles;

(h)    Whether Defendant unlawfully threatened to tow and boot consumers' vehicles—when it did not have the authority to do so—to collect unpaid parking citations;

(i)    Whether Defendant's systematic conduct was willful or in reckless disregard of the law, warranting the award of punitive damages against Defendant and in favor of Plaintiff and the Class, as provided by the DPPA;

(j)    The appropriate equitable and damage remedies that should be awarded to Plaintiff and the Class as a result of Defendant's conduct; and

(k)    Whether Plaintiff and the members of the Class have sustained damages and, if so, the proper measure of such damages.

52.    **Typicality.** The claims and defenses of Plaintiff are typical of the claims and defenses of the Class because Defendant knowingly invaded their privacy by accessing their personal information without their prior express written consent, and PPM mailed each of them an illegal parking citation. There is nothing peculiar about Plaintiff's claims. Indeed, Plaintiff's claims are typical of the claims of other members of the Class. Plaintiff resides in Broward County, Florida, and will knowingly or unknowingly likely be required to use or will encounter PPM's parking lots or garages in the future. Plaintiff is uncertain of his rights and obligations when he has no other practical choice but to park in lots that may be

managed or operated by PPM. Moreover, Defendant still possesses Plaintiff and the Class Members' Personal Information that Defendant illegally obtained from the state motor vehicle records and this Court could easily redress the illegal invasion of privacy by ordering the Defendant to delete all Personal Information related to Plaintiff and the Class.

53.     Adequacy of Representation. Plaintiff will fairly and adequately assert and protect the interests of the Class. First, Plaintiff has hired attorneys who are experienced in prosecuting class action claims within the State of Florida and across the United States, and who will adequately represent the interests of the Class.  Second, Plaintiff has no conflict of interest that will interfere with the maintenance of this class action as his claims are the same as the Class Members he seeks to represent. Further, Plaintiff understands his obligations to the Class, is committed to vigorously litigating this matter, and will fairly and adequately protect and represent the interests of the Class.

## Rule 23 (b)(3) Criteria

54.     The common questions of law and fact set forth herein predominate over any questions affecting only individual Class Members. A class action provides a fair and efficient method for the adjudication of this controversy for these reasons and is superior to the alternative methods involved in individual litigation.

55.     Although the Class is numerous enough to meet the numerosity requirement, the proposed Class does not create manageability problems because the claims turn on common legal determinations.  Either PPM's citations are illegal or they are not. Either PPM unlawfully accessed Plaintiff's and Class Members' Personal Information or it did not. Either PPM received Plaintiff's and the Class Members' prior express written consent or not. There are no unusual legal or factual issues that would create manageability problems as the issues

turn on interpretation of PPM's parking citations, and means and purpose of collecting information enabling the sending of such citations, and the standard practice of accessing state motor vehicle records.

56. Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct.

57. Despite the sizeable sum of money unlawfully collected and retained by Defendant, the claims of the individual Class Members are, nevertheless, small in relation to the expenses of individual litigation, making a class action the only procedural method of redress in which Class Members can, as a practical matter, recover their damages and stop the illegal practices at issue.

58. Class Members are readily identifiable and ascertainable given the nature of Defendant's business practices and using its business records.

## VI.    CAUSES OF ACTION

### COUNT I
**Violation of the Driver's Privacy Protection Act**
**18 U.S.C. § 2721, *et seq.***
**(DPPA Class)**

59. Plaintiff repeats and re-alleges the allegations set forth above in the factual and class allegations in paragraphs 1 - 58, as if set forth fully herein.

60. PPM is a "Person" as defined in 18 U.S.C. § 2725(2).

61. Defendant invaded the privacy of Plaintiff and the Class by seeking their "Personal Information" as defined in 18 U.S.C. § 2725(3).

62. Prior to seeking Plaintiff's and the Class Members' Personal Information, Defendant never received prior express written consent as defined in 18 U.S.C. § 2725(5).

14

63.     The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

64.     The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains…"

65.     Defendant knowingly obtained, disclosed, and used Plaintiff's Personal Information obtained from a state motor vehicle record in order to mail them its illegal parking citations, which is not a permissible purpose under the DPPA.

66.     Defendant willfully obtained Plaintiff's and the Class Members' information without their prior express written consent in reckless disregard of the DPPA.

67.     As a result of Defendant's conduct and invasion of privacy, Plaintiff and the Class have suffered harm, and are entitled to recover the damages available under the DPPA, plus costs and attorneys' fees, as provided under the DPPA, 18 U.S.C. § 2724(b).

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant Professional Parking Management Corporation as follows:

(a)     an order certifying this case to proceed as a class action, designating Plaintiff as the Class representative, and designating the undersigned as Class Counsel;

(b)     actual damages not less than liquidated damages in the amount of $2,500;

(c)     punitive damages upon proof of willful or reckless disregard of the law;

(d)     an order permanently enjoining Defendant from further violating the DPPA;

(e)     an order that Defendant permanently delete Plaintiff's and the Class Members'

illegally obtained Personal Information;

(f)     reasonable attorneys' fees and costs; and

(g)    such further relief as this Court may deem appropriate.

<u>**COUNT II**</u>
**Violation of the Florida Consumer Collections Practices Act**
**Florida Statute Section 559.55, *et seq.***
**(FCCPA Subclass)**

68.    Plaintiff repeats and re-alleges the factual and class allegations set forth above in paragraphs 1 – 58, as if set forth fully herein.

69.    Plaintiff and the Class Members are "consumers" and "debtors" as defined under the FCCPA, Fla. Stat. § 559.55(8).

70.    PPM is a "person" as contemplated by the FCCPA, Fla. Stat. § 559.72.

71.    PPM's willful use of illegal threats in its parking citations abused and/or harassed Plaintiff and the Class.

72.    PPM's debt collection efforts attempted and/or directed towards Plaintiff and the Class Members violated various provisions of the FCCPA, including but not limited to, Fla. Stat. § 559.72 (7) and (9).

73.    Plaintiff and Class Members were unaware that PPM's threats are illegal collection attempts. Moreover, PPM's threats to "tow" and "boot" Plaintiff and Class Members' vehicles at a later date are unconscionable because PPM knew or should have known that such a legal right belongs exclusively to the government or third parties acting on behalf of the government and not to private companies like Defendant PPM.

74.    PPM's threats are a violation of Fla. Stat. § 559.55, *et. seq.* PPM's unconscionable, deceptive, and unfair debt collection practices described herein were likely to, and did in fact, deceive members of the public, including consumers, like Plaintiff and members of

the Class, acting reasonably under the circumstances but to their own detriment.

75.     As a direct and proximate result of PPM's conduct, Plaintiff and the members of the Class have been harmed by PPM's illegal debt collection practices. Plaintiff and members of the FCCPA Subclass have suffered actual damages in at least the amount of the unlawful liquidated parking charges paid by the members of the Class to PPM for all illegal parking citations issued by PPM.

76.     Specifically, Plaintiff Cicale has suffered actual monetary damage equal to $94.99, the amount he paid for PPM's illegal parking citation.

77.     As a direct and proximate result of the unconscionable, unfair, and deceptive debt collection acts or practices alleged herein, Plaintiff and members of the Class are entitled to recover actual damages and punitive damages, to the extent permitted by law, including Fla. Stat. § 559.55, in an amount to be proven at trial.

78.     Plaintiff and the members of the Class also seek reasonable attorneys' fees and costs, as prescribed by Fla. Stat. § 501.211(2).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant Professional Parking Management Corporation for:

(a)     an order certifying this case to proceed as a class action, designating Plaintiff as the Class representative, and designating the undersigned attorneys as Class Counsel;

(b)     actual damages;

(c)     an order permanently enjoining PPM from further violating the FCCPA;

(d)     an order requiring PPM to cease future threats in its citations of "booting" and "towing" vehicles once the vehicle owner has exited its parking lots;

(e)     reasonable attorney's fees and costs; and

(f)        such further relief as this Court may deem appropriate.

## COUNT III
### Violation of Florida's Deceptive and Unfair Trade Practices Act
### Florida Statute Section 501.201, *et seq.*
### (FDUTPA Subclass)

79.    Plaintiff repeats and re-alleges the factual and class allegations set forth above in paragraphs 1 – 58, as if set forth fully herein.

80.    The purpose of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq., ("FDUTPA") is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practice in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

81.    Plaintiff and the members of the Class are a "consumer" as defined by Fla. Stat. § 501.203(7).

82.    The parking citations are "trade or commerce" as defined by Fla. Stat. § 501.203(8).

83.    FDUTPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce, and in unfair methods of competition.

84.    For the reasons discussed herein, PPM violated FDUTPA by engaging in the actions described herein by making it appear as if PPM may lawfully "tow and boot" Plaintiff's and the Class Members' vehicles. PPM fails to disclose that it does not actually have the legal right to "tow and boot" vehicles. Instead, PPM is merely a parking company illegally threatening consumers to increase its profit.

85.    PPM fails to disclose the true nature of its role as a parking attendant.  PPM does not actually have the legal authority nor the ability to "tow and boot" consumers' vehicles once they have exited its controlled properties.

86.     Plaintiff and Class Members were unaware that PPM's threats to "tow and boot" vehicles after they exited PPM's facility or garage are illegal.

87.     PPM's threat to "tow and boot" consumers' vehicles is a violation of Fla. Stat. § 501.201, *et. seq.* PPM's unconscionable, deceptive, and unfair acts and practices described herein were likely to, and did in fact, deceive members of the public, including consumers, like Plaintiff's and members of the Class, acting reasonably under the circumstances but to their own detriment.

88.     PPM's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, PPM failed to disclose to Plaintiff and members of the Class the true nature of its role as a parking attendant or that it does not have a legal right to "tow and boot" consumers' vehicles. PPM collected money from Plaintiff Cicale and the Class based upon its unfair, deceptive, and unconscionable threats in its citations, including its threat to "tow and boot" consumers' vehicles.

89.     PPM's conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, deceive and mislead consumers acting reasonably under the circumstances.

90.     As a direct and proximate result of PPM's conduct, Plaintiff and the members of the Class have been harmed by PPM's impermissible access of their Personal Information, illegal threats to boot and tow consumers' vehicles, and Plaintiff Cicale paid money to PPM as a result of its illegal threats.  Plaintiff Cicale and members of the Class have suffered actual damage in at least the amount of the parking citation paid by Plaintiff Cicale and the Class for all illegal parking citations issued by PPM.

91.     Specifically, Plaintiff Cicale has suffered actual monetary damage equal to $94.99, the amount he paid to PPM after receiving its illegal parking citation, plus any interest due

thereon.

92.     As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiff and members of the Class are entitled to recover actual damages, to the extent permitted by law, including Fla. Stat. § 501.211, in an amount to be proven at trial.

93.     Plaintiff and the members of the Class also seek reasonable attorneys' fees and costs, as prescribed by Fla. Stat. § 501.211(2).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant Professional Parking Management Corporation for:

(a)     an order certifying this case to proceed as a class action, designating Plaintiff as the Class representatives, and designating the undersigned attorneys as Class Counsel;

(b)     actual damages;

(c)     an order permanently enjoining PPM from further violating the FDUTPA;

(d)     an order requiring PPM to cease future threats in its citations of "booting" and "towing" vehicles once the vehicle owner has exited its parking lots;

(e)     reasonable attorneys' fees and costs; and

(f)     such further relief as this Court may deem appropriate.

**COUNT IV**
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
**Florida Statute Section 501.201, *et seq.***
**(Per Se Subclass)**

94.     Plaintiff re-alleges and re-incorporates the factual and class allegations set forth above in paragraphs 1 – 58, as if set forth fully herein.

95.     The Florida Legislature passed FDUTPA to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce, and to make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

96.    Plaintiff and each Class Member were "consumers" within the meaning of Fla. Stat. § 501.203(7).

97.    Defendant was engaged in trade or commerce within the meaning of Fla. Stat. § 501.203(8).

98.    As discussed above, Defendant routinely violates federal law under the DPPA, 18 U.S.C. § 2721, *et seq.*

99.    Florida law prohibits any violation of any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices. Because Defendant violates the DPPA, it also commits *per se* violations of Fla. Stat. § 501.203(3)(c).

100.   Defendant knowingly committed unfair and deceptive business practices in designing and operating its business in violation of federal law under the DPPA.

101.   PPM is a "Person" as defined in 18 U.S.C. § 2725(2).

102.   Defendant invaded the privacy of Plaintiff and the Class by obtaining their "Personal Information" as defined in 18 U.S.C. § 2725(3).

103.   Prior to seeking Plaintiff and the Class Members' Personal Information, Defendant never received Plaintiff's and the Class Members' prior express written consent as defined in 18 U.S.C. § 2725(5).

104.   The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under

Section 2721(b)" of the DPPA.

105.    The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains…"

106.    Defendant knowingly obtained, disclosed, and used Plaintiff's and the Class Members' Personal Information obtained from a motor vehicle record in order to mail them its illegal parking citations, which is not a permissible purpose under the DPPA.

107.    Defendant willfully and knowingly obtained Plaintiff's and the Class Members' Personal Information without their prior express written consent in reckless disregard of the DPPA.

108.    As a result of Defendant's conduct and invasion of privacy, Plaintiff and the Class Members have suffered harm and will continue to suffer harm until the Court orders the Defendant to permanently delete all of Plaintiff's and the Class Members' Personal Information illegally obtained by the Defendant. Plaintiff and the Class are entitled to recover the damages available under the DPPA, plus costs and attorneys' fees, as provided under the DPPA, 18 U.S.C. § 2724(b).

109.    PPM's continuous violations of federal law under the DPPA have resulted in actual damages to Plaintiff and Class Members. Plaintiff Cicale and Class Members have suffered a concrete injury by paying money on an illegal citation and Plaintiff and Class Members have suffered a concrete injury through an invasion of their privacy as a result of PPM's impermissible access of their Personal Information.

110.    The Defendant's conduct violates Fla. Stat. § 501.203(3)(c).

111.    Therefore, Plaintiff and Class Members are entitled to actual damages, injunctive and declaratory relief, attorneys' fees, and costs under Fla. Stat. §§ 501.2105, 501.211(2).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant Professional Parking Management Corporation for:

    (a)    an order certifying this case to proceed as a class action, designating Plaintiff as the Class representative, and designating the undersigned attorneys as Class Counsel;

    (b)    actual damages;

    (c)    an order permanently enjoining PPM from further violating the DPPA and FDUTPA;

    (d)    an order requiring Defendant to permanently delete Plaintiff's and the Class Members' Personal Information that it illegally obtained;

    (e)    reasonable attorneys' fees and costs; and

    (f)    such further relief as this Court may deem appropriate.

## Jury Demand

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 19, 2025.      Respectfully submitted,

            By:  /s/ Bret L. Lusskin, Jr., Esq.
                Bret L. Lusskin, Jr. Esq.
                Florida Bar No. 28069

            **BRET LUSSKIN, P.A.**
            Bret L. Lusskin, Jr., Esq.; FBN: 28069
            1025 E. Hallandale Beach Blvd., Ste 1532
            Hallandale Beach, FL 33009
            Tel: (954) 454-5841 / Fax: (954) 454-5844
            blusskin@lusskinlaw.com

            **SCOTT D. OWENS, P.A.**
            Scott D. Owens, Esq., FBN: 597651
            2750 N. 29TH AVE., SUITE 209A
            HOLLYWOOD, FLORIDA 33020
            TELEPHONE: (954) 589-0588
            scott@scottdowens.com

**VARNELL & WARWICK, P.A.**
Janet R. Varnell; FBN:  0071072
Brian W. Warwick; FBN:  0605573
Christopher J. Brochu; FBN: 1013897
Pamela G. Levinson, FBN: 538345
Jeffrey L. Newsome; FBN: 1018667
400 N Ashley Drive, Suite 1900
Tampa, FL  33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*cbrochu@vandwlaw.com*
plevinson@vandwlaw.com
*jnewsome@vandwlaw.com*
*ckoerner@vandwlaw.com*

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 19, 2025, a true and correct copy of the foregoing

has been furnished via email to:

Haylay S. Ryan
Counsel for Defendant PPM
HRyan@cozen.com
Southeast Financial Center
200 South Biscayne Blvd., Suite 3000
Miami, FL 33131
305-391-0801

By:   /s/ Bret L. Lusskin, Jr., Esq.
        Bret L. Lusskin, Jr. Esq.
        Florida Bar No. 28069