UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| PETER CICALE, JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PROFESSIONAL PARKING MANAGEMENT CORPORATION, a Georgia corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 24-cv-61146-AHS<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT AND/OR TO AMEND THE CLASS DEFINITION AND INCORPORATED MEMORANDUM OF LAW**

Defendant Professional Parking Management Corporation ("PPM") respectfully moves to dismiss Plaintiff Peter Cicale, Jr.'s ("Cicale") Second Amended Class Action Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing or, alternatively, to amend the class definition under Rule 23(d)(1)(D).

**INTRODUCTION**

On September 11, 2025, the Court dismissed former-Plaintiff Frances Remy's claims in their entirety because she failed to plead that she suffered an injury in fact and thus lacked standing. D.E. 55 at 6-8. The Court can and should apply the exact same reasoning to dismiss Cicale's claims as well. In the Second Amended Complaint, Cicale repeats nearly verbatim the same flawed invasion-of-privacy allegations and conclusory harassment, distress, and annoyance allegations that the Court previously held failed to confer standing as to former-Plaintiff Remy. Cicale's allegation that he paid PPM's parking charge notice does not change the analysis. Paying a parking charge notice—which Cicale agreed to pay by parking in the lot—is not a monetary harm, much

1

less one traceable to PPM. Cicale does not allege that he paid more money than he owed and cannot escape that it was *his* conduct—not PPM's—that caused him to incur the parking charge. Even if the Court were to find Cicale only lacked standing as to his Driver Privacy Protection Act ("DPPA") claim, in the absence of a valid federal claim, Cicale's state law claims under the Florida Consumer Collections Practices Act ("FCCPA") and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") must be dismissed for lack of supplemental jurisdiction.

If the Court finds that Cicale does have standing to pursue his claims, the proposed ***nationwide*** DPPA class definition should nevertheless be narrowed to a class of individuals who (1) paid PPM's parking charge notice; and (2) have Florida license plates. The Court already found that former-Plaintiff Remy, who did not pay the parking charge notice, lacked standing. However, as drafted, the DPPA class definition would still give her the right to pursue a claim against PPM. This incongruity cannot stand; it may, however, be remedied by narrowing the class definition. Additionally, numerous courts have identified the standing, typicality, and superiority issues inherent with maintaining a nationwide class where the underlying claims implicate the laws of all 50 states. Cicale lacks standing to represent the nationwide class, as opposed to a class comprised of fellow Floridians who actually paid parking charge notices. Resolution of his claims would not resolve the claims of class members outside of Florida, and a nationwide class presents concerns of manageability and prejudice against PPM and absent class members that can be easily avoided by narrowing the class to individuals with Florida license plates only who received, and paid, parking charge notices. It is necessary and appropriate for the Court to amend the class definition to remedy these deficiencies if it does not dismiss Cicale's claims in their entirety.

**FACTUAL BACKGROUND**

The Court is familiar with the allegations underlying Cicale's claims, which remain consistent with the Court's September 11 Order. *Compare* D.E. 55 at 3-4 *with* D.E. 56 ¶¶ 22-27. On January 5, 2024, Cicale parked at a private parking lot "operated or managed by PPM." DE 55 at 3. Rather than pay for parking, he "simply parked in an available parking space…and subsequently drove away." *Id.* Days later, Cicale received a parking charge notice requiring him to pay a parking charge of "$90.00 plus any applicable state sales tax and/or parking surcharge…." *Id. See also* D.E. 56-1 at 1. Ultimately, he paid $94.99 to PPM, D.E. 55 at 3, which was comprised of the $90 fee and a $4.99 convenience fee for online and telephone payments, D.E. 56-1 at 1.

But this is not the end of the story. Cicale would have the Court believe he had no idea he was required to pay for parking. *See* D.E. 56 ¶ 23. As his lawsuit plainly states: "Plaintiff Cicale simply parked in an available parking space, as any driver commonly would, and subsequently drove away." Cicale is no "common driver," but rather, is someone who ignored clear signage advising him he was parking on private property and was expected to pay for parking, as most parkers commonly do. In fact, as of January 2024, the lot had multiple, prominently posted signs instructing drivers to "pay at pay station in advance" along with parking instructions. *See* Declaration of Bryant Orue ("Orue Decl.") attached hereto as **Exhibit 1** at ¶¶ 4-5. There were also signs located between every 4-6 parking spaces with payment options, and three pay stations with signs indicating that drivers may "pay here." *Id.* ¶¶ 8- 9.

Additionally, there were signs setting forth a "Parking Contract." *Id.* ¶ 7. The Parking Contract clearly stated that Cicale was required to pay for parking in the lot, and the consequence of failing to pay was the imposition of a parking charge plus taxes and surcharges. *Id*. It also clearly stated that, "[b]y parking in this parking facility, you grant [PPM] and its agents permission to

3

obtain registered owner information for the vehicle you park in this parking facility, including the registered owner's address. This information will be used for the sole purpose of issuing you a Parking Charge Notice and collecting any unpaid Parking Charge Notice Fees." *Id*. The Parking Contract is therefore consistent with the mailed parking charge notice Cicale ultimately received. *See generally* D.E. 26-1. Any injury caused to Cicale is self-induced, as he did what most drivers don't do – park on private property with no legitimate belief that he could simply drive off for free. As such, his injury is not traceable to PPM, but rather, is the result of his own breach of contract.

## ARGUMENT

I. **Cicale's Second Amended Complaint Should Be Dismissed for Lack of Standing**

    A. **Legal Standard**

To have standing, Cicale, like former-Plaintiff Remy, must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleadings stage, the "plaintiff must 'clearly . . . allege facts demonstrating'" each element. *Id.* (citation omitted). "[C]onclusory statements do not suffice." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For injury-in-fact, the plaintiff must "plausibly and clearly allege a concrete injury." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020). Courts will not "imagine or piece together an injury sufficient to give [the] plaintiff standing,'" nor "embellish[]" deficient allegations. *Muransky*, 979 F.3d at 925.

Motions to dismiss for lack of standing come in two forms: facial and factual attacks. *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1216 n.2 (11th Cir. 2020). A facial attack challenges standing based on the allegations in the complaint, so the court accepts the allegations as true and simply looks to see if the plaintiff has "sufficiently alleged a basis" for standing. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233

4

(11th Cir. 2008) (per curiam) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam)). A factual attack, by contrast, "challenge[s] standing in fact" irrespective of what the complaint says, *Goldstar Props., LLC v. Angel*, No. 24-14118, 2025 WL 2682723, at *2 (11th Cir. Sept. 19, 2025), and relies on "material extrinsic from the pleadings," *Stalley*, 524 F.3d at 1233. In resolving a factual attack, the "court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Goldstar Props.*, 2025 WL 2682723, at *3 (quoting *Lawrence*, 919 F.2d at 1229).

A party "may raise a court's lack of subject-matter jurisdiction at any time in the same civil action." *United States v. Meyer*, 50 F.4th 23, 31 (11th Cir. 2022) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). Indeed, federal courts have an "independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (cleaned up); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

**B.     The Court Already Held Nearly Identical Allegations Fail to Confer Standing**

In the First Amended Complaint, former-Plaintiff Remy alleged that she suffered an invasion of privacy when PPM allegedly accessed her motor vehicle records, and she also claimed that she suffered harassment, emotional distress, and annoyance. D.E. 10 ¶¶ 39, 40, 44, 45, 61; *see also* D.E. 34 at 4-5, 8 (relying on "FAC, ¶¶39, 40, 44, 45, 61" to support a concrete injury). In a thorough and well-reasoned analysis, the Court rejected her "purely conclusory" allegations about "harassment, distress, and annoyance" and ruled that her "core argument about experiencing concrete injury through invasion of privacy [was not] persuasive." D.E. 55 at 7-8. As to the latter, the Court explained that an invasion of privacy under Florida law requires a "physical or electronic intrusion into a place in which there is a reasonable expectation of privacy." *Id.* at 8 (internal

5

quotation marks omitted) (quoting *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003)). After reviewing precedent on the issue, the Court concluded that "accessing motor vehicle records" in a government database is not "an intrusion" into a private place. *Id.* So, the Court dismissed former Plaintiff Remy's claims for lack of standing. *Id.* at 8, 12.

In Cicale's newly filed Second Amended Complaint, he regurgitates nearly word for word the same flawed invasion-of-privacy allegations and conclusory harassment, distress, and annoyance allegations that the Court already held fail to confer standing, as depicted here:

| First Amended Complaint | Second Amended Complaint |
|---|---|
| "PPM injured Plaintiff [Remy] when it invaded her right to privacy by unlawfully obtaining personal information about her from the State's motor vehicle database." D.E. 10 ¶ 39. | "PPM injured Plaintiff Cicale when it invaded his right to privacy by unlawfully obtaining personal information about him from the State's motor vehicle database." D.E. 56 ¶ 28. |
| "PPM's invasion of privacy resulted in distress to Plaintiff [Remy]. Moreover, PPM's statements asserting a legal right where none exists . . . caused emotional distress to Plaintiff [Remy]." D.E. 10 ¶ 40. | "PPM's invasion of privacy resulted in distress to Plaintiff Cicale. Moreover, PPM's statements asserting a legal right where none exists . . . caused emotional distress to Plaintiff Cicale and the Class." D.E. 56 ¶¶ 29-30. |
| "Defendants' conduct as set forth above caused harm to Plaintiffs and the Class Members by violating their statutory rights, invading their privacy, intrusion upon seclusion, distress, harassment and annoyance." D.E. 10 ¶ 61. | "Defendant's conduct as set forth above caused harm to Plaintiff and the Class Members by violating their statutory rights, invading their privacy of the kind long recognized at common law, and causing distress, harassment and annoyance." D.E. 56 ¶ 45. |

For the reasons set forth in the Court's Order (D.E. 55 at 6-8), as well PPM's prior motion to dismiss (D.E. 19 at 6-8) and reply in support (D.E. 38 at 1-5), Cicale has failed to allege a concrete harm though an invasion of privacy, emotional distress, harassment, and annoyance.

    **C.**    **Cicale Has Suffered No Monetary Harm, Let Alone One Traceable to PPM**

        **1.**    **Cicale Did Not Suffer an Injury by Paying the Money He Owed**

Monetary harm is the "epitome" of a concrete injury. *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019). But paying money, in and of itself, is not a free pass

6

to Article III standing. *See id.* ("The inability to have and use money *to which a party is entitled* is a concrete injury." (emphasis added)); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused physical or *monetary injury* to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." (emphasis added)). There is no monetary harm when a party simply pays what they owe. *See, e.g.*, *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 85 (2d Cir. 2014) (no injury from payments where "plaintiffs acknowledge[d] that they took out the loans . . . and were obligated to repay them, with interest; and they ha[d] not pleaded . . . that they ever paid defendants more than the amounts due"); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (noting plaintiffs did not argue that defendant's "communications caused the plaintiffs to pay debts *they did not owe*" (emphasis added)).

Here, Cicale alleges that he parked in a paid lot, drove off without paying, and later paid the parking charge he owed after receiving the parking charge notice. D.E. 56 ¶¶ 3, 22, 23, 27. He does not allege that he did not owe the money, nor does he allege that he paid more than he owed. That is fatal to standing. As another district court in this circuit explained earlier this year, if the plaintiff "owed" the defendant the "$115" she paid ("and the consolidated amended complaint d[id] not affirmatively allege that she didn't owe it"), then the "*payment would not constitute a concrete injury* necessary to establish standing." *In re Mun. Parking Servs., Inc. DPPA Litig.*, No. 3:24cv320-TKW-HTC, 2025 WL 1475794, at *5 n.3 (N.D. Fla. Feb. 12, 2025) (emphasis added).[1]

---

[1] The district court had already concluded that plaintiffs suffered a concrete harm through the "wasted time" they spent disputing the parking invoices they received, so it saw no need to rule on whether the payment of $115 constituted a separate concrete injury. *In re Mun. Parking Servs., Inc. DPPA Litig.*, No. 3:24cv320-TKW-HTC, 2025 WL 1475794, at *5 & n.3 (N.D. Fla. Feb. 12, 2025). The court nonetheless explained that the payment "would not constitute a concrete injury" absent "affirmative alleg[ations]" that the plaintiff "didn't owe" the money. *Id.* *5 n.3.

7

It is a recurring theme in numerous lines of case law that there is no injury from merely paying the money one owes. In *Rajamin v. Deutsche Bank National Trust Co.*, for example, the Second Circuit "affirm[ed] the district court's ruling that plaintiffs lack standing to [challenge] defendants' ownership of the[ir] loans" because even though plaintiffs asserted that they were "suffering damages with each and every payment," "plaintiffs acknowledge[d] that they took out the loans . . . and were obligated to repay them" and there was "no allegation that plaintiffs have paid more than they owed." 757 F.3d at 84-85. Similarly, there is "no economic injury" when a plaintiff gets what they paid for. *In re Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 531 (7th Cir. 2024) ("Other circuits have agreed there is no economic injury sufficient to confer standing where plaintiffs received what they bargained for."). Debt-collection case law says the same, both within this circuit and without. *See Larkin*, 982 F.3d at 1066 (noting plaintiffs did not argue that defendant's "communications caused the plaintiffs to pay debts *they did not owe*" (emphasis added)); *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021) (a violation of a debt collection statute "might cause harm if it leads a plaintiff to pay *extra* money" (emphasis added)); *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 995, 997 (11th Cir. 2020) ("neither plaintiff allege[d] that he made any payments in response to the defendants' letters" for "*time-barred* debt," which a plaintiff alleged would have been *revived* had he made a payment (emphasis added)). Simply put, Cicale did not suffer an injury by paying the money he owed for the parking charge.

Cicale has failed to sufficiently allege a concrete harm on the face of the Second Amended Complaint, and pulling in facts leads to the same result. Conspicuously located in the lot where Cicale parked is the following Parking Contract, which states, in relevant part:

8



Ex. 1 ¶ 7. So "[b]y parking" in the lot, which Cicale admits he did, D.E. 56 ¶¶ 22, 23, he "agreed to the contract," including the term that if he "fail[ed] to pay" he would have to pay a parking charge. *Id*. In accordance with the Parking Contract, Cicale received a parking charge notice of $90 plus a $4.99 convenience fee, D.E. 56-1 at 2, which he paid, D.E. 56 at ¶ 27. The facts prove that Cicale simply paid the money he owed under the Parking Contract and the parking charge notice, and thus he has suffered no monetary harm that confers standing. *See supra* pp. 7-8.

**2.      Any Alleged Harm Is Traceable Only to Plaintiff, Not PPM.**

Any alleged harm from paying the money Cicale owed by driving away without paying fails for the separate and independent reason that it is not traceable to PPM. An "injury has to be fairly traceable to the challenged action *of the defendant*." *BBX Cap. v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1312 (11th Cir. 2020) (emphasis added). Unsurprisingly, a plaintiff "cannot

9

manufacture standing by incurring costs." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013). "A self-inflicted injury, by definition, is not traceable to anyone but the plaintiff." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020).

When he parked in the lot, Cicale was on notice that, if he did not pay for parking, PPM could (1) "obtain registered vehicle information… including [Cicale's] address," Ex. 1 ¶ 7; and (2) issue the parking charge notice that Cicale later paid. Nevertheless, he decided to drive away without paying. The parking charge that Cicale incurred is a self-inflicted harm that is completely separate from PPM's alleged access of his motor vehicle information and the notice he received. *See Buchholz*, 946 F.3d at 867 (holding that "even if anxiety is a cognizable injury. . . the anxiety that [plaintiff] alleges is not traceable to anyone but him" because "*he* chose not to pay his debts" and "does not dispute that he owed the debts"); *see also Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (holding that a state cannot choose to extend credit and then rely on the injury to its fisc to support standing because no one "can be heard to complain about damage inflicted by [their] own hand"). Indeed, that PPM allegedly accessed Cicale's motor vehicle information at all is directly traceable to his own failure to pay. Regardless, it is clear from the above that Cicale lacks standing to bring his claims, requiring their dismissal.

**II.     The Court Lacks Jurisdiction Over Plaintiff's State Law Claims**

As set forth above, Cicale's claims should be dismissed for lack of standing. However, even if the Court was to only dismiss his DPPA claim for lack of standing, his FCCPA and FDUTPA claims nevertheless must be dismissed for lack of jurisdiction. First, Cicale's *per se* FDUTPA claim (Count IV) rises and falls with his DPPA claim, and because he lacks standing to bring a DPPA claim, he also lacks standing to bring a *per se* FDUTPA claim. *Compare* DE 55 at 6-8 (dismissing former Plaintiff Remy's DPPA claim and *per se* FDUTPA claim for lack of

10

standing). Additionally, the Court cannot maintain supplemental jurisdiction over Cicale's FCCPA and FDUTPA claims once the DPPA claim is dismissed. Cicale alleges that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because his DPPA claim provides a federal cause of action, and the Court has supplemental jurisdiction over the state law claims. D.E. 56 ¶ 15. In the Eleventh Circuit, "once the district court determines that subject matter jurisdiction over a plaintiff's federal claims does not exist, courts must dismiss a plaintiff's state law claims." *Scarfo v. Ginsberg*, 175 F.3d 957, 962 (11th Cir. 1999); *see also Franklin v. Arbor Station, LLC*, 549 F. App'x 831, 833 (11th Cir. 2013) ("Because the district court had no jurisdiction to consider the claims Franklin made based on federal law, it had no jurisdiction to consider the remaining state-law claims."); *Sterling Nat. Mortg., Co. v. Infinite Title Sols., LLC*, No. 10-22147, 2011 WL 1303225, at *5 (S.D. Fla. Mar. 4, 2011), *report and recommendation adopted,* No. 10-22147-CIV, 2011 WL 1222168 (S.D. Fla. Mar. 31, 2011) (dismissing state law claims for lack of supplemental jurisdiction where plaintiff failed to plead RICO and conspiracy claims). As such, even if Cicale only lacks standing as to his DPPA claim, the Court nevertheless cannot consider Cicale's state law claims due to a lack of supplemental jurisdiction.

### III. The Nationwide DPPA Class Definition Should be Narrowed

Cicale alleges the following putative class definition for his DPPA claims:

> All natural persons in the United States whose Personal Information contained in a motor vehicle record, as defined by the DPPA, was obtained or disclosed by Defendant without the Defendant first receiving the person's prior express written consent in the four years preceding the filing of the initial Complaint, through the date of any order granting certification of the class.

D.E. 56 ¶ 47. This definition is deficient on its face, as it does not comport with the Court's earlier standing ruling and fails the requirements of Federal Rule of Civil Procedure 23. Therefore, if the Court declines to dismiss Cicale's claims for lack of standing, it should limit the definition of the

11

DPPA putative class to *individuals with a Florida license plate* who *paid PPM after receiving a parking charge notice.*

### A. Legal Standard

Under Federal Rule of Civil Procedure 23, a court "must determine" issues of class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). To that end, when class allegations do not satisfy one or more of Rule 23's prerequisites, the Federal Rules "require that the pleadings be amended to eliminate allegations about representations of absent persons, and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Courts in the Eleventh Circuit have applied Rule 23(d)(1)(D) to amend or strike class allegations at the pleading stage. *See, e.g., Weinraub v. Bank of Am., N.A.*, No. 1:24-CV-3780-TWT, 2025 WL 2263689, at *2 (N.D. Ga. Aug. 7, 2025) (granting motion to strike class on the pleadings where "it [was] apparent from the face of the Complaint that individualized issues predominate and that no amount of discovery would change this conclusion"); *Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, No. 1:21-CV-3161-TWT, 2023 WL 2355891, at *5-7 (N.D. Ga. Mar. 3, 2023) (granting motion to strike class on the pleadings for lack of superiority and where requested injunctive relief would be incidental to monetary relief). That is because, "[w]hen the unsuitability of class treatment as to one or more issues is clear from the face of the complaint, and when entertaining a motion to strike does not 'mirror the class certification inquiry,' motions to strike those allegations may be properly filed and considered before expensive and exhaustive discovery is undertaken." *Goff v. LaSalle Bank, N.A.*, No. 09-CV-147-TMP-WMA, 2009 WL 10688475, at *3 (N.D. Ala. Sept. 16, 2009) (granting motion to strike class on the pleadings).

### B. The Class Definition Should be Limited to Individuals with Standing

If the Court does not dismiss Cicale's claims for lack of standing, the Court should amend the class definition to include only individuals who paid PPM in response to the parking charge notice. As set forth above, the Court previously found that former-Plaintiff Remy lacked standing because she never paid her parking charge notice and because she failed to analogize her purported injury to an invasion of privacy as "this Court [could not] find Defendants accessing motor vehicle records to be an intrusion into a 'place.'" D.E. 55 at 7-8 (citing *Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254 (S.D. Fla. 2015)).

Despite the Court's holding, Cicale failed to amend his DPPA class definition to remove individuals who, like former-Plaintiff Remy, did not pay in response to PPM's parking charge notice, and therefore lack standing. *See* D.E. 56 ¶ 47. Indeed, as drafted, the DPPA class definition still includes Remy despite that the Court dismissed her claims. "Although in the context of class action litigation the Article III standing inquiry is typically directed to named plaintiffs, the proposed class description must not be so broad as to include individuals who are without standing to maintain the action on their own behalf." *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at *3 (S.D. Fla. Sept. 1, 2006); *see also Dykes v. Dudek,* No. 4:11CV116/RS-WCS, 2011 WL 4904407, at *2 (N.D. Fla. Oct. 14, 2011) ("Standing is a core component of this Article III requirement that must be established by litigants before a court may exercise jurisdiction over their claims. The rules allowing the creation of class actions cannot be used to circumvent this most fundamental requirement."). Plaintiff cannot maintain a putative class comprised of individuals who lack standing. As such, the DPPA class definition should be amended to only include individuals who paid in response to PPM's parking charge notice.

### C. The Class Definition Should Be Limited to Florida License Plates

The DPPA class definition is also overbroad insofar that it covers a nationwide class of drivers, and should be narrowed to include only individuals with a Florida license plate. The nationwide class is problematic for a number of reasons. First, Cicale lacks standing to assert DPPA claims on behalf of individuals with non-Florida license plates. "[N]amed plaintiffs in class actions have, time and again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises." *Feldman v. BRP US, Inc.*, No. 17-CIV-61150, 2018 WL 8300534, at *6 (S.D. Fla. Mar. 28, 2018) (finding plaintiff lacked standing to assert Magnuson-Moss Warranty Act claims on behalf of non-Florida class members); *see also Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1205 (S.D. Fla. 2021) (same). Although DPPA is a federal statute, it necessarily implicates state law; therefore, Cicale cannot represent a nationwide DPPA class, as opposed to a Florida-only class. *See, e.g., Lewis*, 530 F. Supp. 3d at 1205 ("Although the MMWA is a federal law, it necessarily relies on underlying state law breach of warranty claims. Because Plaintiffs are residents of only four states, do not claim a legal injury in any state besides their home state, and do not allege an injury that arises under the laws of any other state, they each lack standing to represent a nationwide class on this claim.").

For instance, as discussed *supra*, assessing whether Cicale has standing would be a different test for those with a non-Florida license plate. This is because standing requires benchmarking a class member's injury to a "historical or common-law analog." *Davis v. Pro. Parking Mgmt. Corp.*, No. 22-14026, 2023 WL 4542690, at *2 (11th Cir. July 14, 2023). Because each state's common law may differ, the analog is dependent on which state's law applies to each class member and how that state analyzes torts encompassing invasions of privacy. In other words, because the jurisprudence of the state is not necessarily the same, this analysis would not be

uniform and typical across class members. Plaintiff therefore cannot establish that his claims share the same characteristics as those who are licensed outside of Florida. Additionally, DPPA permits PPM to use Cicale's motor vehicle information "[f]or any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle…" 18 U.S.C. § 2721(b)(14). Cicale's DMV records are only subject to the laws of Florida, and do not implicate the laws of any other state. As such, he only has standing to represent a class of individuals with Florida license plates.

By the same reasoning, Cicale's proposed nationwide class presents issues of typicality and predominance based on the differences between the state laws implicated by DPPA. Federal Rule of Civil Procedure 23(a) requires a named plaintiff in a class action to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Thus, typicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case." *Kirts v. Green Bullion Fin. Servs., LLC*, No. 10-20312-CIV, 2010 WL 3184382, at *8 (S.D. Fla. Aug. 3, 2010) (internal quotation marks and citations omitted). Similarly, Federal Rule of Civil Procedure 23(b)(3) requires that a class action may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members…." Fed. R. Civ. P. 23(b)(3).

Courts in this District have recognized the difficulties inherent in demonstrating typicality and predominance on behalf of a nationwide class: "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance. It goes without saying that class certification is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim." *Margolius v. Metlife Ins. Co. of Connecticut*, No. 13-CV-

80479-KAM, 2015 WL 11251737, at *3 (S.D. Fla. July 7, 2015) (internal quotation marks and citation omitted). Such is the case here. A finding that (1) Cicale has standing to bring a DPPA claim; and (2) PPM cannot demonstrate that it satisfies Permissible Use 14 under Florida law, would not establish a right of recovery as to a nationwide class. At most, it would only establish a right of recovery as to those individuals with a Florida license plate.

Furthermore, a nationwide class action would not meet Federal Rule of Civil Procedure 23(b)'s superiority requirement. "To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of the litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Theodore D'Apuzzo, P.A. v. United States*, No. CV 16-62769-CIV, 2018 WL 2688760, at *3 (S.D. Fla. Apr. 13, 2018). Courts faced with a nationwide putative class that would involve the application of all 50 states' laws, as here, have found that a class action "would be a very unfair and inefficient method for adjudicating [the] case." *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1104 (C.D. Cal. 2012). *See also Ace Tree Surgery, Inc. v. Terex S. Dakota, Inc.*, 332 F.R.D. 402, 410 (N.D. Ga. 2019) ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."). Not only would it be difficult, if not impossible, to instruct the jury on the laws of all 50 states, *Powers v. Lycoming Engines*, 272 F.R.D. 414, 427 (E.D. Pa. 2011), but the "time-consuming, unnecessarily disjointed, [and] hopelessly confusing" trial would unduly prejudice the Florida and non-Florida class members alike. *Gianino,* 846 F. Supp. 2d at 1104. And, given that the Second Amended Complaint also

pleads two Florida subclasses, D.E. 56 ¶ 47, there is a risk that Florida-law concerns would dominate the case, prejudicing the interests of class members from other jurisdictions. For each of these reasons, it is necessary and appropriate for the Court to amend the DPPA putative class definition to cover only individuals with a Florida license plate who paid PPM after receiving a parking charge notice.

## CONCLUSION

For the reasons above, PPM respectfully requests that the Court dismiss the Second Amended Class Action Complaint or, alternatively, amend the class definition as set forth herein.

Dated: October 3, 2025

Respectfully submitted,

COZEN O'CONNOR

*/s/ Jason Domark*
Jason Domark, Esquire
Florida Bar No. 880191
jdomark@cozen.com
200 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Tel: (305) 397-0801
Fax: (305) 704-5955
*Counsel for Defendant, Professional Parking Management Corporation*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on October 3, 2025, I served a copy of the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                                                 */s/ Jason Domark*
                                                                                  Jason Domark

Bret L. Luskin, Jr., Esquire
**BRET LUSSKIN, P.A.**
1025 E. Hallandale Beach Blvd., Ste 1532
Hallandale Beach, FL  33009
Tel:  (954) 454-5841
e-mail: blusskin@lusskinlaw.com
*Counsel for Plaintiff*
Served via transmission of Notice of
Electronic Filing generated by CM/ECF

Scott D. Owens, Esqure
**SCOTT D. OWENS, P.A.**
2750 N. 29th Ave., Suite 209A
Hollywood, FL  33020;
Tel:  (954) 589-0588
E-mail: scott@scottdowens.com
*Counsel for Plaintiff*
Served via transmission of Notice of
Electronic Filing generated by CM/ECF

Janet R. Varnell. Esquire. (jvarnell@vandwlaw.com)
Brian W. Warwick, Esquire. (bwarwick@vandwlaw.com)
Christopher J. Brochu, Esquire (cbrochu@vandwlaw.com)
Pamela G. Levinson, Esquire (plevinson@vandwlaw.com)
Jeffrey L. Newsome, Esquire (jnewsome@vandwlaw.com)
**VARNELL & WARWICK, P.A.**
400 N. Ashley Drive, Suite 1900
Tampa, FL  33602
Tel: (352) 753-8600
*Counsel for Plaintiff*
Served via transmission of Notice of
Electronic Filing generated by CM/ECF